Horsey vs. Hough.

(Decided 30 May, 1873.)

SAMUEL H. HORSEY vs. AMELIA M. HOUGH, by her
next friend, LEWIS S. HOUGH.

*Sale by Mortgagee—Inadequacy of price—Mortgagee's Sale set
aside—Duties of a Mortgagee selling the mortgaged property.*

A sale in all other respects unobjectionable, will not be set aside for inadequacy
of price, unless the sum reported be so grossly inadequate as to indicate a
want of reasonable judgment and discretion in the trustee.

On the 20th of April, 1869, certain property was mortgaged to the appellant,
to secure the payment of $2000.  Subsequently the mortgagors conveyed
the same property to the appellee for the consideration of $14,850 and the
payment of the mortgage debt of $2000.  This debt being due and unpaid,
the mortgagee under the power contained in the mortgage, advertised the
property for sale, for cash.  The property was subject to the payment of a
judgment held by the State, and on the day of sale, the counsel for the mort-
gagee stated that the lien existed, but the amount was not known.  No
reference was made to the lien in the advertisement of sale.  The mortgagee
reported himself as the purchaser of the property, sold in three distinct par-
cels, for the sum of $1600.  It was shown by the evidence that the property

was worth at least $6600, after deducting the balance of the judgment lien, estimated at $1400. It further appeared that the property had been previously struck off to another purchaser for the sum of $2375, who tendered the sum of $1200 in cash, and stated that the balance would be paid on the ratification of the sale, and offered at the same time any security for its payment which the mortgagee might require. The mortgagee declined to receive the money as not in conformity with the terms of sale; and the property was then offered a second time, and purchased by the mortgagee. On exceptions to the sale by the appellee, as having been unfairly and fraudulently made, and at a price greatly below the value of the land, it was HELD:

That the mortgagee had misapprehended his duty as trustee, which required an advantageous sale of the property for the benefit of all the parties interested, and having failed in this respect, the sale must be vacated.

The duties of a mortgagee in selling the mortgaged property under a power contained in the mortgage, are analogous to those of a trustee under a decree; and the Court will determine upon the propriety of the sale reported by the mortgagee, as in the case of an ordinary trustee, exercising towards the former, however, greater care and strictness; more especially when he has reported himself as the purchaser at a great depreciation.

APPEAL from the Circuit Court for Caroline County, in Equity.

Pending the appeal which was taken by the appellee in this case, and which was disposed of by this Court on the 22nd May, 1872, (*Vide Hough vs. Horsey,* 36 *Md.,* 181;) affirming the order appealed from and dismissing the bill, the present appellant advertised the mortgaged property referred to in this case, for sale, and returned himself as the purchaser. The appellee to whom the mortgaged property had been conveyed, filed numerous exceptions to the ratification of the sale—some of these were afterward withdrawn—the following only were considered by this Court:

10th. Robert Schuyler having become the highest bidder and purchaser of said land, tendered to Samuel H. Horsey, $1,200, in money, and promised to pay the balance of the purchase money, to wit: $1,175; on the

ratification of the sale to him by this Court, and offered to secure said balance by bond with good security; which tender and offer the said Samuel H. Horsey refused.

11th. The sale made and reported was not fairly made, but was made fraudulently.

12th. The prices at which the lands were struck off to Samuel H. Horsey, were greatly below the value thereof. A commission was issued and testimony taken and returned, which will be found, for the purposes of this case, sufficiently stated in the opinion of the Court. By agreement of counsel, the Court passed a *pro forma* order annulling and setting aside the sale. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and MILLER, J.

*Alex. B. Hagner*, for the appellant.

Schuyler's "offer to pay $1200 cash, and the balance when the sale should be ratified," "*to secure the property*," was *not* a compliance with the terms of sale. Every person who bids at an auction sale, does so with reference to the published terms. Each bid is an offer to pay for the property on the published terms, and the fall of the hammer signifies nothing more than that the vendor accepts the offer, *provided the terms are complied with.  Story on Sales, sec.* 463, (2*d. ed.*)

The published terms in this case, which were read in the presence and hearing of Schuyler, and constituted the *contract*, were *cash.*  "Cash" means ready money— not *part* on the day of sale, and the residue at a future time.

The mortgagee was entitled by law, *on the day of sale*, to the debt, interest and costs.  *Code, Art.* 16, *sec.* 125.

The aggregate of Schuyler's bids scarcely covered the debt and interest, and the costs which had accrued to

that day ; the debt, interest and costs on the day of sale amounted to $2,361.40 ; Schuyler's bid to $2,375.00, being an excess of only $13.60 over the amount then due.

So the mortgagee's demand for the whole sum in cash, was neither illegal, harsh nor oppressive.

Mr. Schuyler was simply aiding the next friend of the objectant to "pay off the mortgage," and failing to raise the funds, this plan was adopted to *prevent a sale*— in the language of Lewis S. Hough, "to secure the property."

If such a bid, under such circumstances, is to be allowed, there will be no end to bidders in *bad* faith, and the trustee (or mortgagee) compelled to accept them, although they frustrate "the very object and purpose of the sale." *Gray vs. Veirs*, 33 *Md.*, 22.

There is nothing in the record from which fraud or unfairness in the sale can, in the slightest degree, be inferred. The testimony shows that the mortgagee had but one desire—the recovery of his debt—and that everything which the law or reason required of him was done. The property was fairly advertised, as to name and location ; the authority under which it was offered, and the value and condition of the property fully set forth. If there was any unfairness or fraud, it was on the part of Mr. Schuyler, the agent or friend of "the delinquent purchaser, for whose default the property was to be sold," in making bids in *bad* faith, "designed and intended to delay the *appellant* in the recovery of his debt." This bad faith can be seen in his offer of $1200, for *all* the parcels, and when he could not get all, refusing any. Had he been a *bona fide* bidder there was nothing to prevent him from complying as to *one parcel*. Yet he never offered to do so.

The price at which this property was struck off to the mortgagee is *not* so far below the value as to justify this Court in setting aside the sale. The property was sub-

ject to a judgment in favor of the State, which amounted on the day of sale to $2,648.42; add this to the amount at which the property was purchased by Horsey, and we have $4,248.42, as the total of purchase money. And while some of the witnesses fix the value of the property higher, none have expressed a willingness to buy at that price, nor has any one informed the Court that a purchaser could be had who would give more, if the property was again offered for sale.

Besides, the mortgagee bought *under the threats of a law suit,* made by the attorney for the objectant, before the property was offered the second time. To appreciate this objection it is only necessary to remember that the objectant was the purchaser of Kugler's equity of redemption, under an express agreement to pay this mortgage debt; that she failed to perform the covenants in the mortgage; that she endeavored to set up an illegal claim to a reduction of $707, and sought an injunction to restrain the mortgagee from selling the premises; *Vide Hough vs. Horsey,* 36 *Md.,* 181; that failing in this, she endeavored, through Schuyler, to raise the money "to pay the mortgage;" that, being unsuccessful, it was determined that Schuyler should bid in the property, "offer to pay $1200 in cash, and the balance when the sale should be ratified, *to* secure the property;" that the mortgagee refused this offer; that *the solicitor for the objectant* then gave notice that the *purchaser would buy a law suit*; and that failing under these circumstances, to bring within $775 of the *objectant's bid,* through Schuyler, which was satisfactory, she comes in and asks that the sale be not ratified, because no one would give more under the inspiration of her threats. She commits the wrong of attempting to "frustrate the very object and purpose of the sale," and, having failed, seeks the aid of this Court to take advantage of it. If there is any inadequacy in the price, it is owing to the acts of the

exceptant, through her next friend, and not to any want of judgment, discretion or fairness in the mortgagee; nor is there any other cause which, when viewed in connection with the alleged inadequacy of price, is sufficient to justify setting aside this sale. *Glenn vs. Clapp*, 11 *G. & J.*, 1; *Cohen vs. Wagner*, 6 *Gill*, 251; *Johnson vs. Dorsey*, 7 *Gill*, 269.

*Thomas J. Keating* and *J. W. Bryant*, for the appellee.

If the appellant had at the time when Mr. Schuyler offered him the $1200, doubted the propriety of accepting less than the entire purchase money, he could have postponed the sale to some future time, and have stated expressly that less than the entire purchase-money would not be deemed a compliance with the terms of sale, and thus have shielded himself from the imputation we now unhesitatingly make, "that he conducted the sale so as to become himself the purchaser at a sacrifice to the appellee, and in disregard of the right of others;" and did more—consummated a sale, which, under the confused circumstances, prevented a fair price being obtained for the property.

For a trustee to refuse a tender of $1200.00 out of a purchase-money of $2375.00, with a promise of full payment on ratification of sale, is certainly in no sense, according to the practice in the Courts of Equity, a non-compliance that will justify a re-sale at a *mere nominal price*. Mr. Horsey should have given Mr. Schuyler a full and fair opportunity to have complied with the terms of sale before again offering, especially as this was the first time the property had been exposed to public sale, and the bid made by Mr. Schuyler for Mrs. Hough's benefit was *bona fide*.

That Mr. Schuyler acted in good faith cannot be reasonably questioned; he offered the $1200.00 cash; he offered any security required; he was instructed by counsel

that the payment of $1200.00 on day of sale would be sufficient.

This Court has full jurisdiction, as a Court of Equity, to consider all objections presented against the ratification of sales made by mortgagees. *Code of Public General Laws, Art.* 64, *secs.* 8 *and* 9.

Gross inadequacy of price, indicating a want of reasonable judgment and discretion in the trustee, is sufficient to set aside a sale. *Hintze vs. Stingel,* 1 *Md. Ch. Dec.,* 283; *Cohen vs. Wagner,* 6 *Gill,* 236. A reduced price, accompanying other allegations, casting doubt upon the propriety of a sale is sufficient to set aside a sale. *Hintze vs. Stingel,* 1 *Md. Ch. Dec.,* 283; *Kauffman vs. Walker,* 9 *Md.,* 229. A *bona fide* purchaser at trustees' sale may pay the purchase money upon the ratification of sale. *Goldsborough, et al. vs. Ringgold, et al.,* 1 *Md. Ch. Dec.,* 239; *Murdock's Case,* 2 *Bland,* 461.

A mortgagee, when selling property, occupies the relation of a trustee, and must discharge the trust—not for his own advantage, but of those for whom he is acting. *Turner vs. Bouchell's Exs.,* 3 *H. & J.,* 99.

A mortgagee's sale will be set aside upon proof of error, mistake or misunderstanding—it must appear in all respects fair and proper, or it cannot receive the sanction of the Court. *Bolgiano vs. Cook,* 19 *Md.,* 375.

STEWART, J., delivered the opinion of the Court.

The sale vacated by the *pro forma* order of the Circuit Court for Caroline County, purposes to have been made, in pursuance of the provisions of the 64th Article of the Code.

From the view we take, it is not necessary to consider all the exceptions that have been interposed to the ratification of the sale.

The tenth, eleventh and twelfth exceptions, with the testimony applicable thereto, are sufficient to show the character of the sale.

Horsey vs. Hough.

The tenth and eleventh refer to the circumstances that transpired at the time of the sale, and the twelfth, to the inadequacy of the price, at which the property sold; according to the uniform decisions of the Court, no sale will be set aside, in all other respects unexceptionable, for inadequacy of price; unless the sum reported by the trustee is so grossly inadequate as to indicate a want of reasonable judgment and discretion in the trustee. *Glenn &c. vs Clapp,* 11 *G. & J.*, 9.

We think the inadequacy of the price of the property, in this case comes within the range of the above rule, and must be regarded, in connection with the other facts in the case, as a sufficient reason for affirming the order, vacating the sale.

The proof shows that Samuel H. Horsey, the mortgagee, made the sale in question, and reported himself as the purchaser, in virtue of the mortgage from Kugler and wife, bearing date the 20th April, 1869.

In appears, that Kugler and wife, by deed of 7th November, 1870, for the consideration of $14,850, therein expressed, and the payment of this mortgage debt of $2000 to Horsey, conveyed the property to Mrs. Hough.

It further appears, that the property was subject to the payment of a judgment held by the State.

The Counsel for Horsey stated on the day of sale, that this lien existed, but the amount was not known.

In the advertisement of sale, there is no reference to this judgment.

The mortgagee reports the fact of this lien existing, and that he believes a considerable balance remains due.

Hough states there is about $1400 due on the judgment, and there is no testimony to the contrary.

Schuyler values the property, lot No. 1, at $4000; states it was improved by the use of lime—lies at Goldsborough station on the Maryland and Delaware Railroad—has on it a large peach orchard—some 1500 trees in full bearing.

Lot No. 2, he values at $1000 to $1200—has a number of peach trees on it and medium buildings. Lot No. 3, from $3000 to $4000—the buildings are better than ordinary—large dwelling house and steam saw-mill on it in good order.

Dr. Hardcastle thinks the property, No. 1, cheap at $4000 on the day of sale, now worth $5000—lot No. 2, worth $3500—lot No. 3, $4000.

Thos. Jones estimates it at from $10,000 to $11,000. George W. Kugler, at $12,800.

From these estimates, take the *minimum* of Schuyler, $8000, and deducting the balance of the judgment *lien* $1400, and they furnish on the lowest value of the property $6600. There was no testimony to the contrary.

Horsey, the mortgagee, reports himself as the purchaser of all this property, sold in three distinct parcels, to wit: the "Wyatt Farm" 145 acres, for $500—the "Sylvester Farm" 97 acres, for $400—the dwelling-house, with the saw-mill and premises, 6 acres, for $700; for the sum of $1600 in the aggregate.

He also reports that the same property had been previously struck off to Robert Schuyler, at the respective prices of $900, $550 and $925, making a total of $2375; but that he refused to comply with the terms of sale, as advertised.

He does not report specially the facts, and circumstances transpiring, under which the property had been bid off by Schuyler, but in his testimony, he states with more particularity, what occurred—in substance, that Schuyler offered to pay $1200 in cash, and said that he would pay the balance on the ratification of the sale; and to the receipt of the money he objected, as not in conformity with the terms of sale.

Schuyler states, he offered Horsey $1200, and the balance as soon as the sale was ratified, with any security he

might ask for its payment—that Horsey would not take the money, alleging no reason.

The auctioneer Irvin, testifies that the property was struck off to Schuyler, as the highest bidder, who tendered, what he stated to be $1200, and said that the balance would be paid on the ratification of the sale.

The testimony of Richardson and Fieroe, is of the same tenor.

From the proof, it appears, that Schuyler, acting for the benefit of the mortgagor's assignee, bid off the property at $2375, exceeding Horsey's subsequent bid $775, and offered to pay in cash $1200, and there was ample evidence, that this sum was tendered by him, and not accepted; and no question was made as to his disability to pay the balance.

The $1200 in cash offered by Schuyler, was only $400 less than the entire amount, at which Horsey afterwards bid off the property.

In determining upon the approval or rejection of the sale, in such cases, the true question to be considered, is not so much, whether there has been a literal or technical, as a fair and reasonable compliance with the terms of sale; and a *bona fide* disposition of the property.

Without intending to charge the mortgagee, in this case with the wilful violation of his trust; the circumstances disclosed by the proof, show reasonable ground for the inference, that he misapprehended the nature of his duty, as trustee, which required an advantageous sale of the property, for the benefit of all the parties interested.

His conduct was inconsistent with the obligations of a trustee, properly understood.

The mortgagee was acting, not alone for himself, but as a fiduciary, and for the benefit of all parties interested in his proceedings.

His duties were analogous to those of a trustee under a decree; and the Court must determine upon the propriety

of the sale reported by him, as in the case of an ordinary trustee.

There is this difference, however, between the trustee and the mortgagee, which should never be forgotten by the latter, that he has a personal interest in the proceeding, and that the mortgagor has, notwithstanding, reposed full trust and confidence in his strict impartiality, and that there must be ample reciprocity on his part by a fair and just discharge of his duty.

No Court can countenance a breach of faith, or failure of duty under such circumstances—on the contrary, in the review of his proceedings, when brought in question, the Court must see that his conduct measures up to this standard of fiduciary duty; and will exercise greater care and strictness in deciding upon the merits of the sale made by him; more especially in a case where the mortgagee has reported himself as the purchaser, at a great depreciation. *Hubbard vs. Jarrell,* 23 *Md.,* 661.

*Order affirmed, and*
*cause remanded.*

(Decided 5th June, 1873.)