HARRIS J. CHILTON *vs.* WALTER B: BROOKS and others. SAME *vs.* SAME.

*Sale under Power in a Mortgage—Sale set aside—Inclement weather—Advertisement.*

A handsome three-story brick dwelling house, built at a cost of $7000, and located on a fashionable avenue, just outside the limits of the City of Baltimore, on premises subject to an annual ground rent of $200, was sold for $2500, a sum less, by at least $1000, than its market value, under a power of sale in a mortgage for $3500. The day on which the sale took place, the 12th of March, 1888, was one of the coldest and most disagreeable of the season, and the only persons present were the mortgagor, the auctioneer, the assignees of the mortgage who were the owners of the ground rent, and their attorney. There was but a single bid, and, after being cried for about two-minutes, the house was struck off to the assignees. HELD:

That the sale should be set aside, and a re-sale had under section 9, of Article 64, of the Code.

Where the advertisements in the newspapers fully describe the property to be sold, the non-observance of a custom among auctioneers in the city to place notices upon the doors or in the windows of houses for sale, stating the time and place of sale, is not a sufficient ground for setting aside a sale of property made under a power of sale in a mortgage.

Chilton *vs.* Brooks, *et al.*

APPEALS from the Circuit Court for Baltimore County, in Equity.

Proceedings were taken in this case by Walter B. Brooks and others, trustees and assignees, against Harris J. Chilton for the sale of certain leasehold estate, situated on Madison avenue, under a power of sale contained in a mortgage from said Chilton. The property was sold. Exceptions were filed to the sale by the mortgagor as also to the ratification of the auditor's account distributing the proceeds of sale. The Court (FOWLER, J.,) overruled the exceptions, and from the order ratifying the sale, as also from the order confirming the auditor's account, the exceptant appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*R. R. Boarman,* for the appellant.

*W. Burns Trundle,* for the appellees.

MILLER, J., delivered the opinion of the Court.

One of the appeals in this case is from an order ratifying a sale made by the assignees of a mortgage executed under Art. 64, of the Code. The property consisted of a handsome three story brick dwelling house, built at a cost of about $7000, and located on Madison avenue in Baltimore County just outside the limits of Baltimore City. There was an annual ground rent of $200 on the premises, and the mortgage under which the leasehold interest was sold was for $3500.

In accordance with the advertisement the sale took place on the premises on Monday the 12th day of March, 1888, shortly after four o'clock in the afternoon.

The parties present were the mortgagor, the auctioneer, and the assignees with their attorney who were also the owners of the ground rent.  There was but a single bid of $2500 which was made in behalf of the assignees, and after being cried for about two minutes, the house was struck off to them at that price.  It is shown by a preponderance of proof that this sum is less by at least $1000, than the market value of the property at the time.

One of the exceptions to its ratification is to the effect that the day, on which the sale was made, was one of the coldest and most disagreeable of the season, in consequence of which there was no attendance of bidders and no competition.  This allegation as to the state of the weather on that day is fully sustained by the proof.  It was one of the days of the notorious March "blizzard" when the cold was so exceptionally severe in this latitude as to make it dangerous for persons to be exposed to it.  The parties immediately interested who attended could not conduct the sale out of doors. They had to enter the house where there was no fire, and we think it plain that the business was hurried through in the briefest possible time on account of the intense cold.  We think no disinterested and prudent trustee, mindful of his duty to protect the interests of all parties concerned, would have allowed the sale to take place on such a day and under such circumstances. The house, though actually just outside the then city limits, was practically a city house on a fashionable avenue leading to the Park, was a valuable and handsome one recently built, and we can conceive of no good reason why there was no competition for it, except that the extreme inclemency of the weather prevented bidders from attending the sale.  This condition of the weather, in connection with the fact that the house was bid in by the mortgagees at a $1000 or

more below its market value, affords sufficient ground for setting the sale aside, no matter how derelict the mortgagor may have been in complying with the conditions of the mortgage.    While it is well settled that mere inadequacy of price by itself, is not sufficient to set aside a sale, unless it be so gross and inordinate as to indicate want of reasonable judgment and discretion, or misconduct or fraud in the trustee, or some mistake or unfairness for which the purchaser is responsible, yet where it appears there is any *other just cause* to doubt the propriety of the sale, it is always a consideration very proper to be viewed by the Court in connection with it that the sale has been made at a reduced price.    Such is the rule applicable to sales made by trustees under decrees in equity, and there are strong reasons for applying it with more strictness in cases of sales under mortgages executed in compliance with the provisions of Art. 64 of the Code.    This law grants exceptional privileges to mortgagees.    They, or their assignees, can sell at once upon default without the delay of first obtaining a decree for that purpose; and (what is more important) they can become purchasers at their own sales without having their title impeached upon that ground. *Code, Art. 64, sec.* 13.    In this case the appellees availed themselves of this privilege. They were therefore bound to act with strict impartiality in regard to the sale.    Being both vendors and purchasers there was greater reason for diligence and effort on their part to obtain the best price, "and the Court is called upon to exercise more care and strictness in passing upon the sale thus made." *Hubbard and Wife vs. Jarrell, et al.*, 23 *Md.*, 66; *Horsey vs. Hough*, 38 *Md.*, 130; *Loeber and Herring vs. Eckes*, 55 *Md.*, 3. For the reasons stated the order ratifying the sale must be reversed, the sale set aside, and the cause remanded for a re-sale under Art. 64, sec. 9, of the Code.

In regard to the objection that the sale was not sufficiently advertised we deem it proper to say, as the question may again arise on the re-sale, that it cannot be sustained. The advertisements in the newspapers fully described the property, were quite sufficient, and more in fact than the terms of the mortgage required. It was proved that there was a custom among auctioneers in the city to place notices upon the doors or in the windows of houses for sale, stating the time and place of sale, but the non-observance of this custom, though a very good one, would not in our opinion be sufficient to set aside a sale made under a mortgage like this.

An appeal is also taken from the order ratifying the account distributing the proceeds of sale. As the sale is vacated, this account necessarily falls with it; but inasmuch as similar objections may be made to the account distributing the proceeds of the re-sale, it is proper to consider them now. The distribution of the proceeds must of course be governed by the terms of the mortgage. These require the proceeds to be applied "*first* to the payment of all expenses incident to such sale, *including taxes, ground rent and other charges,* and such commissions as are allowed on sales under decree of Court; *secondly,* to the payment of all claims of the said mortgagee, his successors or assigns under this mortgage, whether the same shall have matured or not, and the surplus, if any, to be paid over to the mortgagor." Under these broad terms we discover no valid objection to any of the items charged against the proceeds in this account.

> *Order reversed, and*
> *cause remanded.*

(Decided 14th December, 1888.)