This appeal is from a decree of the Circuit Court of Baltimore City dismissing the bill of complaint of the Lombard Governor Company and the National Meter Company against the Mayor and City Council of Baltimore, and certain other defendants.
The material allegations of the bill are to the following effect: In May, 1910, the McCay Engineering Company entered into a contract with the Mayor and City Council of Baltimore, known as Sanitary Contract No. 51, by which the McCay Company "undertook to furnish the electrical and mechanical equipment, to erect metal stairways, build special floors, piers and abutments, and other parts of and equipment for a building for the Sewage Disposal Works erected under the supervision of the Sewerage Commission of the *Page 305-320 
[MISSING PAGES] *Page 321 
Certain suburban land was sold under foreclosure proceedings subject to the lien of a prior mortgage; the prior mortgage contained provisions for releasing the land from time to time in one or more blocks into which it had been subdivided; according to the terms of the advertisement, the land was first offered by separate blocks and finally sold as an entirety; upon objection to the ratification of the sale on the ground that the land should have been divided and offered in separate lots instead of in bulk, it was held, that upon all the facts of the case no valid exception could be made on this ground to the ratification. p. 326
Mere inadequacy of price is not sufficient ground upon which to set aside a sale, unless it be so gross as to indicate mistake or fraud on the part of the trustee or mortgagee making the sale, or unless there is some just cause which the purchaser may be responsible for, which affords reasonable ground to suppose that the sale was improperly made. p. 326
Suburban property, consisting of 106 acres on the Pimlico Road near Baltimore, was sold under foreclosure proceedings for $36,000, subject to a prior mortgage of $66,000 and to other liens, costs and charges, making the actual aggregate purchase price $110,676; upon an exception to the ratification of the sale on the ground of inadequacy of price, it was held, that the price could not be said to be so grossly below its full value as to make proper a reversal of the decree ratifying the sale. p. 327
Decided June 25th, 1913.
Two appeals in one record from the Circuit Court for Baltimore County, in Equity (HARLAN. J.).
The facts are stated in the opinion of the Court.
The causes were argued together before BOYD, C.J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.
William Colton, for the appellant.
M.N. Packard and John M. Little, for the appellee. *Page 322 
STOCKBRIDGE, J., delivered the opinion of the Court.
The Wylie Heights Company was formed in the year 1907 for the purpose of developing a tract of about 125 acres on the northern edge of the City of Baltimore, lying partly in Baltimore City and partly in Baltimore County. The tract extended from the Pimlico road on the west to Green Spring avenue on the east, and with a portion of it lying to the east of Green Spring avenue. It was conveyed to the company by Gerald Hill, and was at the time of the conveyance subject to a mortgage of $100,000 which had five years to run from the 29th July, 1907. On July 29, 1907, the day when Mr. Hill conveyed the property to the Wylie Heights Company, that corporation executed a mortgage on the property for the sum of $25,000 to William B. Finney, which amount is recited in the mortgage to have been that day loaned and advanced to the Wylie Heights Company. While it does not in terms appear from the record, the inference is very strong that the purpose of this loan was to prosecute the development work on the property. The corporation having thus come into possession of the property, it had the same, or at least that portion of it lying between the Pimlico road and Green Spring avenue, platted in lots, streets laid out and to some extent graded and macadamized, some drains and sewerage pipes laid, and concrete walks put down to a considerable extent. By the Spring of 1912, out of 328 lots platted, 79 had been sold and 249 remained unsold. Defaults had been made in both mortgages and in April of 1912 Dr. Finney instituted proceedings to foreclose his mortgage.
Under the terms of the mortgage from Gerald Hill to Henry F. Carstens, Trustee, for $100,000, it was provided that the mortgagor and his assigns should have the right to sell the property in lots, and that the mortgagee would release lots having "an area of one acre and be in the form of a square,i.e., bounded by four sides of equal length at right angles to each other; any number of such lots may be included in a single release." For the release of each such lot fronting on the east side of the Pimlico Road, the mortgagee *Page 323 
was to be paid the sum of $5,000, and for each lot lying to the east of those fronting on the Pimlico Road and the west side of Green Spring avenue the sum of $2,000. At the time when the foreclosure proceedings were instituted, payments had been made upon the Carstens mortgage to an extent which reduced the amount then due on it from $100,000 to $66,807.03, and $1,000 appears to have been paid on account of the principal of the $25,000 due on the mortgage to Dr. Finney, although there was at this time a considerable accumulation of interest due and unpaid on each of these mortgages, besides the taxes for three years. In the prosecution of the improvements there had been two other mortgages placed on the property in 1910, one to Dr. Finney for $5,728 and one to Dr. Charles G. Hill for $25,000.
The property was sold under the foreclosure proceedings instituted by Dr. Finney on the 7th of May, 1912, subject to the outstanding mortgage to Carstens, upon which there was then due $66,807.03, and was bought in by the mortgagee Finney, for his own protection, for the sum of $36,000. It further appears from the testimony that the Wylie Heights Company in April, 1910, sold out to another corporation known as the Edgecombe Park Company. Upon the report of the sale, exceptions to its ratification were filed by both the Wylie Heights Company and the Edgecombe Park Company, and it is from the order of the Circuit Court for Baltimore County overruling these exceptions and ratifying the sale that each of these corporations have appealed.
The exceptions to the sale are twelve in number, but it is unnecessary to consider each one in detail, since they all may be grouped under three heads — first, the advertisement of the sale; second, the manner of the sale; and third, the adequacy or inadequacy of the price for which the property was sold.
With regard to the advertisement the objection made is twofold in character, insufficiency of the media through which the property was advertised, and insufficiency of description of the property. The evidence is that advertisement in full *Page 324 
was made in the Democrat and Journal, a paper published in Towson, and the Daily Record, a law and real estate paper published in the City of Baltimore, and that such advertisements were made for the full length of time required by law; that an abbreviated form of the advertisement appeared in the BaltimoreSun; that large placards were placed upon the property; that galley proof copies of the advertisement in the Record were mailed by the auctioneer to more than a hundred persons, who in his judgment, were likely to be interested as possible purchasers in the sale of such property, and that in all of said advertisements the public was advised that copies of a plat of the property and fuller details with regard to it could be had upon application to either the auctioneer or the attorney of the mortgagee. This advertising of the property was greater than is required by the law of this State, and therefore no valid objection can be had to the sale because of the means employed to give public notice of it. The objection of the sufficiency of description in the advertisement is not supported by the proof; that which the witnesses who testify to this really object to is not any misdescription or inaccuracy of description of the premises, but goes in reality to a different phase of the case, the judgment exercised by the trustees as to the manner of the offering of the property, and this involves the second of the grounds of the exceptions filed to the ratification of the sale, the manner of the conduct of the sale.
When the property was surveyed and laid off, it was divided into blocks and lots; the advertisement of the sale stated that the property would be offered by blocks, and subsequently as a whole, the mortgagee reserving the right to close the sale as a sale of blocks or an entirety, according as the property would produce most. The ground of the exceptions under this head, is that the property should have been offered by lots, instead of by blocks, for the purpose of attracting individual buyers for single lots, and the evidence is more or less conflicting upon this point. The situation was one which undoubtedly called for the exercise of judgment *Page 325 
to an unusual degree. In the case of Thomas v. Fewster,95 Md. 446, a similar question was presented where the mortgaged property consisted of seven and one-half acres and was sold in its entirety; the sale was set aside upon the grounds, that the mortgage indebtedness in that case would have been amply satisfied by the sale of less than the entire property, and also that a division of the property into lots would have produced double the amount which was realized. The estimated number of lots in that case was fourteen, and that which may be perfectly true where the property is of such size as to be divisible readily into a small number of lots, is not necessarily so where the number of lots is very much larger. In this case the corporation had been pushing the sale of lots for over four years, and had sold 79 out of 328 lots, not quite one-quarter of the whole. The first mortgage on which there still remained due more than $65,000 was rapidly approaching maturity, and in such a situation there is much force in the evidence given by some of the witnesses, that there was not sufficient demand for individual lots to absorb the remaining 249 lots, and that, therefore, the property when sold under a foreclosure proceeding, must be sold by some larger division than by the platted lots. It approaches more nearly the situation which was presented in the case of Hopper v. Hopper, 79 Md. 400, where exceptions were filed, upon the same ground, to a sale made for the purposes of partition; in which case it was said by JUDGE ROBINSON, speaking for this Court, that "It was the duty of the trustees of course to offer the property in such a manner as to bring its fair market value and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property. Whether it is advisable to sell land by the acre, or in building lots, depends largely upon the location of the property and the surrounding circumstances." But there was another and still greater objection to the offering of this property by the lot. As the property had been laid out, none of the lots were of such size and shape as to make possible the sale of any single lot, and *Page 326 
require as matter of right the release of the Carstens mortgage on that lot. It is true that this mortgagee had on numerous occasions waived the strict enforcement of the provisions contained in his mortgage with respect to releases, and when appealed to by the representative of Dr. Finney, to agree that the property might be offered in lots, he required as a condition of so agreeing that the assent thereto should be obtained from the subsequent mortgagees, and from the owners of the equity of redemption. A letter was addressed asking for such assent by the attorney of Dr. Finney, to which no reply in writing was ever made by Dr. Hill, holder of the fourth mortgage, or the owner of the equity of redemption. The recollection of the witnesses Hill, Packard and Freeny differs as to what passed orally at an interview upon this subject, Mr. Hill being positive that he did give the assent for his father as fourth mortgagee and for the owner of the equity, to a sale by lots; Mr. Freeny and Mr. Packard being equally positive that he distinctly objected to a sale by the lot, but assented to a sale by blocks, or in the entirety. Whatever may have been the real facts, the situation as it existed just before the advertisement of the sale was made, could have been readily solved by a distinct reply in writing to the letters sent out by Mr. Packard. This was not done, and as Mr. Packard understood the assent given to be one to a sale by blocks and not by lots, no valid exception can be predicated upon this ground to the advertisement and sale in the manner it was made.
The rule has been long and well settled in this State "that mere inadequacy of price, of itself, is not sufficient to set aside a sale unless it is so gross as to indicate misconduct or fraud on the part of the trustee or mortgagee making it, or there is some just cause which the purchaser may be responsible for which affords reasonable ground for supposing that the sale was improperly made." Conroy v. Carroll, 82 Md. 127; Shaw v.Smith, 107 Md. 523.
Upon the question of price the evidence in this case is very conflicting, and differs, therefore, radically from the case of *Page 327 Robertson Co. v. Chambers, 113 Md. 232, where the evidence was uncontradicted that the property was worth double the amount for which the sale was made. The facts in this case are easily understood. A large amount of money had been expended in the development of property, all or nearly all of the lots fronting on the Pimlico Road, and which from the provisions of Carstens mortgage would appear to have been most valuable, had already been sold; to dispose of the balance would involve additional and probably still greater expenditure of money; the sale would necessarily be protracted over a period of years, during which extensive advertising and attention to the property would have to be given as well as the payment of taxes on the portions remaining unsold, and the ultimate amount which could or would be realized therefrom was largely speculative. It was a matter of opinion upon which two persons might and would naturally differ, and differ widely, and the testimony in this case shows that persons of equal experience did so differ. In this respect the case is closely analagous to that of Chilton
v. Brooks, 71 Md. 445; and in such a situation, as was very tersely said by JUDGE IRVING in that case, the inadequacy is not "in itself sufficient to invalidate the sale".
Without reviewing in detail the opinions and reasons given by the different witnesses for their widely varying estimates, it will be sufficient to say, that the evidence offered upon both sides has been carefully examined and compared, and that as the result of such examination this Court cannot say that the witnesses of the appellee are entirely wrong, or that the price for which the property was sold was so grossly below its full value as to make it proper for this Court to set aside the sale.
The order of the Circuit Court for Baltimore County in overruling the exceptions and ratifying the sale will, therefore, be affirmed.
Order affirmed, with costs in each case to the appellee. *Page 328