JACOB KRES, Executor, *v.* ISAAC L. HORNSTEIN.

[No. 5, April Term, 1931.]

*Decided June 9th, 1931.*

2

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*H. Mortimer Kremer,* with whom was *Albert J. Fleischmann* on the brief, for the appellant.

*Louis Hollander,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This appeal is from an order overruling exceptions by one of the mortgagors to a sale of the mortgaged property by the assignee of the mortgage, and ratifying the sale.

The grounds of the exception were eight in number, only two of which are important, viz.: (1) Inadequacy of advertisement; (2) inadequacy of price.

The mortgage foreclosed was dated January 10th, 1927, and was from Adolph Kres and Morris H. Tumbler to Herbert M. Brune, surviving trustee, for $10,000, payable in notes, five for $250 each, payable at intervals of six months, and the sixth for $8,750, payable three years after date, each with interest. The mortgage was assigned to the appellee, Isaac L. Hornstein, on May 12th, 1930, who on May 21st, 1930, filed a petition for sale of the mortgaged property under the assent to decree clause in the mortgage. Louis Binder, a member of the bar of Baltimore City, was appointed trustee to sell, and he proceeded promptly to advertise the property, and sold the same at public sale on the premises on June 30th, 1930, to the Lakeview Building & Loan Association for $8,000.

The property was advertised in the *Daily Record* as "Trustee's Sale of Valuable Leasehold Property Nos. 1429 and 1431 Pennsylvania Avenue," and was described as beginning on the northeast side of Pennsylvania Avenue 119 feet 3¾ inches, more or less, southeast from the corner formed by the intersection of the northeast side of Pennsylvania Avenue and the southeast side of Mosher Street, and running thence

southeast on Pennsylvania Avenue 33 feet 1 inch, thence northeast parallel with Mosher Street to Boulden Alley, thence northwest on Boulden Alley 33 feet 1 inch; and thence southwest parallel with Mosher Street and bounding on the southeast line of the lot heretofore leased by said Harris and wife to a certain William R. Deaver to the place of the beginning; the improvements on said lot being known as Nos. 1429 and 1431 Pennsylvania Avenue, subject to an annual ground rent of $198.50 and improved by a two-story building with store front. The advertisement was signed by the trustee and the auctioneer, and was published on the 6th, 13th, 20th, 27th, and 30th of June. There was no other notice given of the sale, except a placard placed inside the show window three weeks before the sale, and a flag nailed to the premises on the morning of the day of sale.

The uncontradicted testimony by two real estate men was that the market value of the leasehold property at the time of the sale was over $14,000; that the lot was a large lot 33 feet 1 inch by 171 feet, improved by a large brick warehouse which covered the entire lot, which building was and still is occupied by an organization known as the Goodwill Industries, Incorporated, under a lease dated February 25th, 1925, for five years, at an annual rental of $2,000, with an option to the tenant to renew the lease for an additional five years at an annual rental of $2,400; that the total expenses, including taxes, ground rent, water rent, and insurance, were $707.83; that, although it was a fine day, there were very few people present at the sale, consisting mostly of the mortgagors and officers of the Lake View Building Association, which held a second mortgage; that there was only three bids, one by Hornstein for the association of $7,000, one by Tumbler, one of the mortgagors, of $7,500, and the final price bid by Hornstein for the association of $8,000; that Hornstein was chairman of the board of the association; that besides Hornstein, there were present, representing the association, its president and another member of the board; that Binder was the association's attorney; that there was no bid by anyone interested only as a purchaser.

4

It is said in *Tiffany on Real Property* (2nd Ed.), page 2724: "The fact that the property is sold at an inadequate price does not of itself invalidate a sale, but in the case of a very great disparity in this respect the court will be astute in extracting from the facts of the case sufficient to justify it in annulling the sale by reason of mistake, surprise, inadvertence or unfair conduct." And, in the same paragraph: "A failure to conduct the sale in such manner as to secure the highest possible price for the property will usually be regarded as ground for setting aside the sale."

These observations of Mr. Tiffany are fully borne out by the decisions of this court, and the fact that in some cases advertisements have been held sufficient which, in others, although differing only slightly, have been held bad, is accounted for by the fact that in the one case there either was not satisfactorily shown any great inadequacy of price, or it was reasonably apparent that the defect had not affected the sale; while in the other the court was satisfied that the price was too inadequate to stand, and found a reason for the inadequacy in the defect in the advertisement or in the manner of sale. Examples of the former are found in *Cockey v. Hampson*, 140 Md. 551, 118 A. 72, and in *Bregel v. Beckman*, 157 Md. 471, 146 A. 231; and of the latter in *Robertson Mfg. Co. v. Chambers*, 113 Md. 232, 77 A. 287, 289, and *Long v. Worden*, 148 Md. 115, 128 A. 745, 748. The rule as stated in *Robertson Mfg. Co. v. Chambers, supra,* is: "The court will not set aside a sale in all other respects unexceptionable for inadequacy of price, unless the sum reported by the trustee is so inadequate as to indicate a want of reasonable judgment and discretion in the trustee. But, where any other just cause appears to doubt the propriety of the sale, it is very proper to be viewed in connection with it that the sale has been also made at a reduced price"—citing *Glenn v. Clapp*, 11 G. & J. 8, and *Loeber v. Eckes*, 55 Md. 1. See also *Chilton v. Brooks*, 69 Md. 584, 16 A. 273. Compare *Weber v. Merowitz*, 160 Md. 674, 155 A. 169, on the facts. In *Long v. Worden, supra,* where we found that (1) the property was not properly advertised, (2) that it was not

properly sold, and (3) that it was sold for a grossly inadequate price, we said, in an opinion by Judge Offutt: "It is not necessary for us to decide in this case whether any one of these considerations standing alone would have been sufficient to justify the court in setting aside the sale, because here the conclusion that the sales should be set aside rests upon all of them. The inadequate price was to some extent a consequence of the manner in which the property was advertised and sold and afforded some evidence of the effect of the course pursued by the assignee in selling it."

In the present case the complaint is, not that the property was not sufficiently located by the advertisement, but that it was not properly brought to the attention of the public; that an unusually deep lot was described only by its front, with no mention of its depth in feet so as to give a prospective bidder a fair idea of its capacity; that there was no mention of the fact that a large warehouse or factory ending in an attached garage in the rear covered the entire lot; that this building was leased for five years at a rental of $2,000 per year with the option to the tenant of another five years at an annual rental of $2,400.

A further complaint is that the only newspaper advertisement was in the Daily Record. The Daily Record is a most valuable medium of reaching professional bidders. But, in order to reach the general public, most prudent owners would at least insert a short notice in a paper of wider circulation, giving the attractive features of the property and referring to the more extended description in the Daily Record. We have noted a practice of this sort in a number of cases. We are not to be understood, however, as holding that a failure to do this would in itself be a sufficient ground for setting aside the sale.

We are satisfied that no prudent man dealing with his own property would have omitted in the advertisement to call attention to the advantages mentioned. And this court has held in a number of cases that it is the duty of a trustee to exercise the same judgment and prudence in making a sale that a careful owner would exercise. *Carroll v. Hutton*, 88

Md. 676, 41 A. 1081; *Robertson Mfg. Co. v. Chambers, supra; Long v. Worden, supra; Gittings v. Morris,* 156 Md. 565, 144 A. 836. It is not enough that all of these things could have been ascertained by any one contemplating attending the sale, by making inquiry and investigating for himself. The purpose of an advertisement is not alone to advise the public that property is to be sold. A very important function is to attract bidders. And this can best be done by making the thing to be sold as attractive as fairness will permit. The advertisement should "direct the attention of the public to any important fact or facts connected therewith, having a tendency to increase the value of the property." *Welch v. Byerly,* 150 Md. 107, 132 A. 616.

It is apparent from the testimony of the trustee that he failed to appreciate the extent of his duty. He made no inquiries or investigation, but was content to give to the auctioneer a reference to the place of record of the mortgage and leave the rest to him. He seemed to think that the description in the mortgage was all that was necessary. His action in the matter seems to have been entirely casual.

"A provident owner coming into possession of this property, and not knowing the extent of the improvements thereon or the rights belonging thereto, would not have attempted to advertise it for sale without first having informed himself as to the character and extent of such improvements and the rights and advantages belonging thereto." *Robertson Mfg. Co. v. Chambers, supra.*

The duties of a trustee in such case are clearly stated in *Carroll v. Hutton, supra.* In *Gould v. Chappell,* 42 Md. 466, it was said: "It is the duty of the trustee to bring the property to the hammer in a judicious and advantageous manner, and if he fail to exercise that caution and prudence which may fairly and reasonably be expected from a provident owner in regard to the sale of his own property, and in consequence thereof the property is sold at a depreciated price, a Court of Equity will not sanction such a sale, even though the conduct of the trustee may be untainted with fraud, and the purchaser be without fault." And in *Deford v. Mac-*

*watty,* 82 Md. at page 185, 33 A. 488, 491: "We do not, however, rest our judgment on mere inadequacy of price, but on the ground that there has been a plain omission, misconception, or neglect of duty—call it what you please—on the part of the receiver in the sale of this property, and in consequence of which it sold far below its fair value."

Much reliance is placed by appellee upon the cases of *Johnson v. Dorsey,* 7 Gill, 269; *Evans Marble Company v. Abrams,* 131 Md. 204, 101 A. 964, and *Bregel v. Beckman, supra.* It cannot be too often repeated that each case must depend largely upon its own facts. The facts in the present case differ in several important respects from those in the cases last referred to. In each of them the purchaser was entirely unconnected with the foreclosure proceedings, and the rights of such a purchaser were stressed; while here the purchaser held a second mortgage on the property and through the chairman of its board purchased the first mortgage, evidently for the purpose of foreclosing it, as within a few days after the assignment the assignee proceeded to obtain a decree under which the attorney of the purchaser was appointed the trustee to sell.

In *Hubbard v. Jarrell,* 23 Md. 66, it was said that, where trustees are permitted by law to purchase at their own sales, there is greater reason for diligence and effort on their part to obtain the best price, and the court is called upon to exercise the more care and strictness. We think the present case comes within that principle. See *Mahoney v. Mackubin,* 52 Md. 357; *Horsey v. Hough,* 38 Md. 131; *Chilton v. Brooks,* 69 Md. 584, 16 A. 273.

In *Johnson v. Dorsey, supra,* the main ground urged for setting aside the sale was that persons who would have bid more for the property did not attend the sale because of a general impression that the sale would not take place, but that some arrangement would be made to prevent the sale. The court found that the mortgagor himself was responsible for this impression. There was no serious question as to the advertisement.

In *Bregel v. Beckman, supra,* the objection to the adver-

8

tisement was mainly that it did not sufficiently locate the property, and that the property was not posted. The character of the property as residential, and the neighborhood, was sufficiently described. The court found from the evidence that there was no difficulty in locating it, and that the failure to post it was due to the request of the mortgagor. The decision in that case was largely influenced by the conduct of the mortgagee in permitting improvements to be made by the purchaser without objection.

In that case and in *Johnson v. Dorsey, supra,* and in *Evans Marble Co. v. Abrams, supra,* there was a conflict in the testimony as to value, while in the present case testimony offered by exceptant was uncontradicted. It is significant that this court distinguished the case of *Edgecombe Park Co. v. Finney,* 121 Md. 320, 88 A. 143, from *Robertson Mfg. Co. v. Chambers, supra,* on that very ground.

One of the grounds urged by appellee for refusing to set aside the sale is that no one is produced who would bid more at a resale. But it does not appear, from the opinion of this court in *Robertson Mfg. Co. v. Chambers,* that such an offer was a *sine qua non.* It is true that, by reference to the record in that case, it will be found that the appellant offered to bid a higher price on a resale, but that offer amounted to nothing, because appellant held a second mortgage on the property for more than the difference, and the mortgagor was a bankrupt.

Again it is urged that the exceptant is estopped because he could have objected to the advertisement before the sale. But a like objection was unsuccessfully made in *Thomas v. Fewster,* 95 Md. 446, 52 A. 750, and in *Deford v. Macwatty,* 82 Md. 168, 178, 33 A. 488. In the case last cited it was said: "The mere failure to make such objections would not, in itself, be a sufficient reason why the court should ratify the sale, when it plainly appears that the sale was not fairly and properly made."

> *Order reversed, and cause remanded for further proceedings; costs to be paid out of the proceeds of a resale of the property.*