JOHN WATSON, JR., ET AL. *v.* JESSE N. BOWEN,
ATTORNEY AND ASSIGNEE
[No. 2, January Term, 1938.]

*Decided March 7th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edward L. Ward,* with whom was *John Watson, Jr.,* on the brief, for the appellant.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County, over-ruling exceptions by a mortgagor to the ratification of a public sale made by an assignee, under a power contained in a mortgage.

Of the several objections presented in the record we find it necessary to consider, at length, only the one pertaining to the announcement by the auctioneer that the lots about to be sold were subject to certain definite restrictions limiting their use and occupation. Immediately prior to the offering of the property, the auctioneer, after reading the advertisement, read from a statement, prepared by the assignee, as follows:

"(1) That no building shall be placed thereon nearer than fifteen feet from the street line and no part of any building, such as porch, veranda, bay or projecting window, area or steps shall be erected more than five feet beyond the building line.

"(2) That no house shall be erected thereon to cost less than $3,500.00, and only one house is to be built to fifty foot front.

"(3) That at no time shall any part of said land be used or occupied for manufacturing, brewing, distilling or sale of spirituous or malt liquors; nor shall said lot or any part thereof or any building erected thereon at any time hereafter be used or occupied as a tavern, drinking

saloon, bone-boiling establishment, tannery, slaughter-house, glue, soap, candle, starch or gunpowder manufactory or for other offensive or dangerous purposes; nor for keeping of pigs, nor for use of burial or cemetery purposes.

"(4) The premises shall never be sold, leased, demised or conveyed to or owned by a negro; nor be occupied or resided on by persons of negro descent, except in a menial capacity or as caretaker.

"(5) That no barn, stable, crop or other outbuilding shall be erected nearer to the main road or avenue on which the lot fronts than fifty feet or nearer to any other road or avenue than twenty-five feet, and shall not be used for residence purposes."

The assignee, under mistake of fact, directed these restrictions to be read, by the auctioneer, as applying to the entire property instead of to only two small parcels, being a part of two of the lots. None of these restrictions were contained in the mortgage under which the property was sold, nor did any of them appear in the advertisement of the sale. The only reference to restrictions in the advertisement was that "the restrictions, if any, to which the property may be subject will be read at the time and place of sale."

Twenty-six building lots were offered separately, as was an improved lot of two acres, and then the entire property was offered as a whole.

These restrictions were of a character that should not have been imposed on the lots of ground without authority, either in the terms of the mortgage or from those who had interests in the property subject to the first mortgage under which the sale was made.

It is the right of the mortgagor to have the property sold just as described in the mortgage. The assignee had no right to change the terms and conditions of the mortgage or the nature and character of the property, without the consent of those having interests therein. It was decided in the case of *Sullens v. Finney*, 123 Md.

653, 91 A. 700, that, after the execution and delivery of a mortgage, the mortgagor, acting alone, has no authority to modify or impair the estate or interest conveyed, and a sale, under a mortgage, clothes the purchaser with the same title held by the mortgagor at the time the mortgage was recorded.

It is obvious that the mortgagee did introduce terms, conditions, or restrictions, by his own act, that did not exist with respect to the property as described in the mortgage. Any rule by which either party could make such changes would amount to allowing one party to alter the terms of a contract without consent of the other. In a foreclosure proceeding, an interest or estate different from that which has been accepted as security for a debt cannot be sold, except that, when the property is divisible, he may sell no more of the pledge than is necessary to satisfy his claim. In this case a different interest or estate from that described in the mortgage was sold, and this the assignee had no right or authority to do, and it is upon this ground we rest this opinion.

As an answer to this objection it is contended that the mortgagor, having stood by without objecting, at a time when he should have objected to the various irregularities complained of, including the restrictions, he is estopped or precluded from now objecting to the ratification of the sale. This contention is answered in the case of *DeFord v. Macwatty,* 82 Md. 168, 33 A. 488. The court there said: "The mere failure to make such objections would not, in itself, be a sufficient reason why the court should ratify the sale, when it plainly appears that the sale was not fairly and properly made." Again, in the case of *Kres v. Hornstein,* 161 Md. 1, 155 A. 171, the court said that a failure to conduct the sale in such a manner as to secure the highest possible price for the property will usually be rated as a ground for setting aside the sale. The imposition of numerous restrictions upon property ordinarily would not be conducive to the highest possible price, but the failure of the mortgagor to object to the sale, at the time, would not preclude

him from filing objections to its final ratification. In 22 C. J. 218, the rule was stated to be: "Defendant is under no obligation to present his objections to a sale at the time the sale is being made, and by failing to make his objections then he does not waive his right to urge them on the motion to confirm."

The contention of the appellant is that, because of these restrictions and the manner in which the various lots were offered, injury was done to him. With respect to the method in which property must be offered, this court has said, in *Thomas v. Fewster*, 95 Md. 446, 449, 52 A. 750, 751, that: "A trustee is bound, for the protection of the interest of all the parties concerned, to bring the property into the market in such manner as to obtain a fair market price. He must consider the best mode of offering the property, not only as to whether it was advisable to offer it in lots or parcels, but also to the proper location and outlines of each parcel." These appellants contend that this rule was not observed.

The twenty-six lots were offered separately and the improved property was offered separately. Then the property was offered as a whole. This, the appellants urge, was not sufficient; but that the twenty-six lots should also have been offered as a whole, because they were laid off for development purposes and it is conceivable that the persons interested in the development of the property might have been interested in the entire twenty-six lots but not interested in the lots separately, nor in the large lot with the valuable improvements. To meet this objection, each of the twenty-six lots could be offered separately, and then, as a whole. The larger and improved lot could be offered separately, and then the property, all of it, could be offered, together, and the best price obtained separately or in the aggregate should be accepted and this objection obviated.

We conclude there should be a resale of the property.

*Order reversed, with costs.*