# HOLTON PARK COMPANY

*vs.*

## JAMES A. GARY, Trustee.

*Mortgages: partial releases; when not provided for may be refused if security diminished; refusal of release no excuse for default in covenants; foreclosure; inadequacy in price; when no ground for vacating sale; evidence of possible higher price; cost of development.*

A valuable farm had been sold subject to a mortgage to secure the balance due on the purchase price; the trustee in the mortgage had resigned and a new one was appointed and the trust was administered by a court of equity; the purchaser tendered an amount of money in payment of a lot on the property, and asked for a release for so much of the land from the operation of the mortgage; the trustee, under the order of the court, refused, as the release would have diminished the security; subsequently the mortgagor tendered other payments and asked for other releases, with the same result; when the interest fell due the mortgagor tendered payment, provided the trustee would execute the releases that had been asked for on payment of the sums that had been offered; the trustee, under the order of the court, refused, and foreclosed the mortgage for the failure to pay the interest; and upon appeal from an order ratifying the sale it was, *held*, that the facts presented no reason for setting aside the sale made in compliance with the terms of the mortgage.                                             p. 520

Mere inadequacy of price is not sufficient reason for vacating a mortgage sale, unless it be so gross as to indicate fraud and misconduct on the part of the trustee and purchaser; and, in considering the possibility of a higher price that might be obtained for the property, consideration must be given to the cost of development of the property for the purpose of realizing such prices.　　　　　　　　　　　　　　p. 518

*Decided January 15th, 1919.*

Appeal from the Circuit Court for Baltimore County. In Equity. (McLane, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*J. Royall Tippett* and *Charles F. Stein,* for the appellant.

*Charles F. Harley* (with whom were *Joseph R. Gunther, Wm. H. Dawson* and *Francis E. Pegram* on the brief), for the appellee.

Thomas, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County overruling exceptions to and finally ratifying a sale made under the power contained in a mortgage and by the attorney therein named.

In March, 1895, the Circuit Court for Baltimore County assumed jurisdiction of the trust estate created by a deed, dated September 29th, 1886, from Pamelia A. Holton, and appointed Judge Henry Stockbridge trustee in the place

of his father, then deceased. In April, 1907, JUDGE STOCK-BRIDGE was on his petition relieved and discharged from the further execution of the trust and James A. Gary, of Baltimore County, was appointed trustee in his place. In October, 1908, Mr. Gary, trustee, under the authority of the Court, sold and conveyed to the Enterprise Realty Company of Baltimore City for $60,000.00 the farm in Baltimore County, on the Dogwood Road and Franklin Turnpike, known as "The Meadows," containing three hundred and twenty-seven and a half acres of land, and took from said company a mortgage of said land to secure the payment of the purchase money to the amount of $45,000.00, payable five years after date, with interest at five per cent., payable semi-annually. The mortgage contained the following provisions:

> "And it is agreed that the said Enterprise Realty Company of Baltimore City, its successors or assigns, shall have the right to anticipate the payment of said mortgage indebtedness upon the following terms:

> "First—The lot of ground beginning at the intersection of the Dogwood Road with a line binding on the east side of the road leading to the Mansion House on said property, and running thence along the east side of said road, and continuing the same course until it intersects another line drawn at right angles from the west outline of the whole tract of property and so as to include the barn situated thereon, thence reversing said line and bounding thereon to the west outline of said property; thence along the west outline of said property to the Dogwood Road, and thence along the Dogwood Road to the place of beginning, shall be released from the operation hereof upon payment of the sum of twenty thousand dollars ($20,000.00).

> "Second—All the balance of said property shall be released from the operation hereof, upon payment of two hundred dollars ($200.00) per acre, in tracts of not less than five (5) acres, until mortgage is paid off."

The mortgage contained a covenant on the part of the mortgagor to pay the mortgage debt and interest and taxes, etc., and provided that in case of default the entire mortgage debt should become due and the said trustee, "his heirs and assigns or successors in said trust, or Francis E. Pegram, their attorney or agent," were authorized at any time after such default to sell the property, "upon giving twenty days' notice at the time, place, manner and terms of sale, in some newspaper printed in Baltimore County, and such other notice as by the said mortgagee, etc. * * * may be deemed expedient."

The property was purchased by the Enterprise Realty Company with the view of developing and selling the same as suburban property, and to that end the company caused a survey and plat of the property to be made dividing it into building lots. Nothing appears to have been accomplished by the Enterprise Realty Company and not a single lot was sold by it, and in May, 1913, the appellant, the Holton Park Company, was incorporated and the entire property covered by the mortgage was conveyed to it by the Enterprise Realty Company. Thereupon Mr. Tanchum Silberman wrote Mr. Gary the following letter applying for an extension of the mortgage:

"Baltimore, May 27, 1913.

"James A. Gary, Esq.,

"722 Equitable Building.

"Dear Sir:

"In October, 1908, the Enterprise Realty Company purchased from you, as trustee, the Holton Farm, called 'The Meadows,' situated on the Franklin Turnpike and Dogwood Roads, for the sum of $60,000.00, paying you $15,000.00 cash, and giving you a mortgage for the balance of purchase money, viz, $45,-000.00, to run for five years.

"A new company, called the Holton Park Company, has recently been incorporated with a capital of $10,-000.00, and duly organized, which has purchased from

the Enterprise Realty Company the Holton farm called 'The Meadows,' subject to the legal operation and effect of your mortgage. In this new company (the Holton Park Company) I personally own 75 per cent. of the stock, and expect to control the remaining 25 per cent. of the stock, while none of the other stockholders of the Enterprise Realty Company has any interest in the Holton Park Company.

"The five years for which the mortgage for $45,000.00 was given you, as trustee, being about to expire, I ask that the mortgage be extended for another period of five years under the same terms, in order to give the new company an opportunity to develop the property, the time being not yet ripe to sell the whole or any part of the same in building lots. Your trust estate can not in any way be hurt by an extension of the mortgage, as the land will undoubtedly increase in value as the city grows towards it, and it will receive the interest on the investment, as heretofore, promptly.

"In the meantime, I intend to occupy, with my family, the mansion on the property, and overlook the farmer who will work the place, with the endeavor and hope that the same may be made to carry itself. The farmer now tells me that within the next year or so the farm will be a paying proposition, in which event, after paying the carrying carges of interest, taxes, insurance, etc., the Holton Park Company will, I am sure, be glad to turn over to you a portion of the excess in reduction of the mortgage.

"While I cannot bind the Holton Park Company, I will use my best endeavors to have that portion of the property adjoining the Colonial Estates developed first and in any development to do as little injury to the balance of the property as a farm as possible.

"Hoping you may see your way clear to extend the mortgage, I remain,

"Very truly yours,
                              "Tanchum Silberman."

The application of Mr. Silberman, the president of the Holton Park Company, was submitted to the Court under whose jurisdiction the trust was being administered and in pursuance of an order of the Court Mr. Gary, the trustee, entered into an agreement extending the mortgage for another period of five years, beginning on the 16th day of October, 1913. In April, 1916, the president of the Holton Park Company applied to Mr. Gary to release a certain lot or parcel of the land covered by the mortgage, containing five acres, and offered to pay therefor one thousand dollars. The matter was submitted to the Court (JUDGE DUNCAN) having jurisdiction of the administration of the trust, and that Court passed an order refusing to allow the trustee to execute the release on the ground that the five acres were on the front of the property, on the Franklin Turnpike and Dogwood Road and the release thereof would materially injure the "security" afforded by the mortgage. In May, 1916, the Holton Park Company filed a petition in the case in which the trust was being administered praying the Court to rescind its previous order directing the trustee not to execute the release and to pass an order requiring him to do so. Upon this petition the Court passed an order granting the relief prayed "unless cause to the contrary be shown" on or before the 29th of May, 1916. This petition was promptly answered by the trustee, and in his answer the trustee alleged that the release demanded by the Holton Company was not sought in furtherance of a *bona fide* sale of the lot, or in accordance with the agreement of the company not to so dispose of the property as to impair the security of the mortgage, but that the purpose of the company was to obtain an unfair advantage of the mortgagee. In September, 1917, the company requested the release of another lot containing about ten acres of land, and in October following applied for the release of two other lots, one containing ten acres and the other about nine acres of land. In the petitions of the trustee reporting these applications to the Court the lots

are described as fronting on the Dogwood Road or on the Franklin Turnpike, and on each of the petitions the Court passed an order directing the trustee not to execute the releases unless cause to the contrary be shown on or before a day therein named. In October, 1917, the company, through its attorney, tendered the mortgagee, or his attorney, the amount of interest on the mortgage about to become due and the amount of taxes on the property overdue and unpaid on condition that the mortgagee would execute the releases applied for. The trustee, or his attorney, refused to receive the money on the conditions named, and on the 22nd of October the trustee filed a petition in the case in which the trust estate was being administered setting out the default under the mortgage and praying for an order authorizing him to foreclose the mortgage. The Court passed an order accordingly, and on the same day a suit was docketed and foreclosure proceedings were instituted, but the property was not advertised for sale until February, 1918, because of the efforts, in the meantime, of counsel for the company and mortgagee to reach an agreement by which parts of the property could be sold and released from the lien of the mortgage in such manner as not to impair the security of the mortgage. The efforts of counsel having failed, the property was advertised in February and was sold at public sale by the attorney named in the mortgage at the Court House door in Baltimore County on March 18th, 1918, to Charles H. Anderson for the sum of $42,500.00. The sale was reported to the Court and on the 13th of April the Holton Park Company filed exceptions to the sale on the grounds: First, because the property was insufficiently advertised. Second, because the price at which it was sold is grossly inadequate. Third, because of the misconduct of the trustee at the sale of the property. Fourth, because of the refusal of the trustee to execute the partial releases referred to. Fifth, because at the time of the sale there was pending in the Court

proceedings instituted by the mortgagor to require the trustee to execute the partial releases mentioned.

Before the sale, Mr. Pegram, the attorney named in the mortgage, who made the sale, had the property surveyed and a plat made dividing the farm into forty lots or "little farms". Mr. Pegram testified that the reason he had it so divided was that the Enterprise Realty Company had the property platted and divided into small lots and had never been able to sell any of them. The survey and plat were made by an experienced surveyor who had made the survey for the Enterprise Realty Company. The sale was advertised in the Baltimore County Jeffersonian, a newspaper published in Baltimore County, the Daily Record, the Baltimore Sun, the Baltimore American and the Baltimore Star. The auctioneer testified that he sent at least one hundred copies of the advertisement in the Jeffersonian to real estate men in Baltimore City and the suburbs and to others that he thought might be interested in the property; that a "poster" was exhibited in his window; that a large poster and a plat was put on a board in front of the Court House door; that a large plat was pasted in his window; that a large oilcloth sign was put up on the premises and that a poster was put up at the Court House door in Baltimore. The advertisement in the Jeffresonian contained a description of the farm by metes and bounds, courses and distances, and a similar description of each lot numbered from one to forty. Lot No. 1, on which the Mansion House was located, was described by metes and bounds, courses and distances, and as containing fifty acres of land, more or less, and the improvements on the farm were described in the advertisement as follows:

"Improvements—Fine Mansion House, with all modern conveniences, Green Houses, Farmer's House, Tenant House, Stable and necessary outbuildings, all situated on Lot No. 1."

"The forty lots as above described and shown on said plat will first be offered singly and bids reserved.

All of said lots will then be offered as an entirety and
the bids reserved, and the property will be sold in the
manner which will produce the most money.

"Copies of the above mentioned plat may be obtained
from the undersigned, attorney, the above mentioned
solicitors, and the auctioneers."

Under the objection that the property was "insufficiently
advertised," the appellant contends that the advertisement
was defective because it did not mention the fact that there
was some timber on the land, which some of the witnesses
valued at $3,300.00, and did not refer to the fact that there
was a race track on the property. We do not deem it
necessary to discuss the evidence as to the value of the
timber and cord wood on the farm and the condition of the
race track, which had not been used for a great many years.
The farm was a well-known property, and there is nothing
in the evidence to indicate that the omission in the adver-
tisement of any reference to the timber or wood on the prop-
erty affected the sale. The objection urged that the several
little lots or farms into which the property was divided were
not marked out or located on the land is clearly not suffi-
cient to warrant this Court in setting aside the sale. The
advertisement contained a full description of each lot and
referred to a plat giving the numbers and the lines of the
lots into which the farm was divided and according to which
the lots were offered at the public sale. The case of *Carroll*
v. *Hutton*, 88 Md. 676, relied on by counsel in support of
this exception, is totally unlike the present case. There a
tract containing about eighteen hundred acres of land was
divided into five farms, on each one of which there was "a
good dwelling house, a good barn and the usual outbuild-
ings," and in reference to the advertisement the Court said:
"It is clear there is nothing in this advertisement to identify
the several farm tracts that were to be sold. It shows, no
doubt, that they are to be taken out of the tract of land
mentioned in the mortgage, but there is nothing as to the

particular location of each parcel or as to any of its prom-
inent characteristics. Nothing appears as to the contents
of any of the farms, the character of the soil, the number
of dwellings and their condition, or as to the proportion of
arable land. The trustee does inform the public that a plat
has been made of each farm which could be seen at his office
in the City of Baltimore; but what the plats contain or would
show was not set forth ever so briefly, and no copies of them
were made and distributed." In the case at bar the advertise-
ment, as we have stated, contained a full description of each
lot, and a description of the buildings, all of which were on
lot No. 1, as stated in the advertisement, and in addition
referred to the plat showing the relative location of the lots,
a copy of which was put up with the advertisement at the
Court House door and exhibited at the sale.

In reference to the exception on the ground of inadequacy
of price it is only necessary to say that while the witnesses
produced by the company valued the property for the pur-
pose of suburban development at between ninety and one
hundred thousand dollars, this evidence tended to show that
the development would have required considerable time and
the expenditure of a large sum of money. On the other hand,
the testimony of the witnesses called by the mortgagee is to
the effect that the price at which the property was sold was
the fair market value thereof. In *Garritee* v. *Popplein,* 73
Md. 322, the Court said: "It is well settled, even should
we concede the contention of the appellants, that mere inade-
quacy of price, standing by itself, is not sufficient to vacate
a sale, unless it be so gross and inordinate as to indicate
fraud and misconduct on the part of the trustee and pur-
chaser," and the same principle is announced in the later
case of *Hunter* v. *Highland Land Co.,* 123 Md. 644.

Under the third exception the only "misconduct" of the
trustee relied on by the appellant is his failure to exercise
*his judgment* in the division of the property into lots. In
support of this objection to the sale counsel for the appellant

refers to *Carroll* v. *Hutton, supra.* In that case the sale was made by Mr. Latrobe, the attorney named in the mortgage, who, this Court said, "instead of going himself or employing some competent person to examine the property and thereupon exercising his judgment as to the manner in which the property could be divided most advantageously for the purposes of sale, he sent the surveyor, not with directions to examine the property, but only to fix the outlines of the five farms as they had formerly been used and occupied. * * * The property was offered in five farms, without the trustee having devoted a moment's attention to the subject." In this case Mr. Pegram, the attorney named in the mortgage, by whom the sale was made, testified that *he* had the property divided into the lots or little farms described in the advertisement, and that he employed Mr. Coonan to prepare the plat. The parties interested in the property had the benefit of his judgment as to the manner in which to divide the property and offer it for sale.

In disposing of the fourth exception we cannot review the action of the Circuit Court for Baltimore County in *another* case. There is nothing in this record to show why the appellant did not press its petition in that case for a rescission of the order directing the trustee not to sign the releases applied for. Instead of doing so it refused to pay the interest on the mortgage and the taxes due on the property. By the express terms of the mortgage the mortgagee, or the attorney named therein, was authorized to sell the property in case of default in the payment of taxes or interest on the mortgage debt. In section 1505 of Jones on Mortgages (5th Ed.), it is said: "The breach by the mortgagee of an independent covenant is no defense to the foreclosure of a mortgage which by its terms has become due and payable," and in the case of *Timms* v. *Shannon,* 19 Md. 296, this Court said: "The grantee not evicted, but remaining in undisputed possession, must rely on his covenants, except in case of fraud. The ground upon which the decisions appear to go, is that the

bond and mortgage for the payment of the purchase money, and the covenant of warranty from the grantor are separate and independent covenants, and the breach of one cannot be urged as a defense to an action upon the other." The refusal of the trustee to execute the releases demanded by the appellant was not, under the circumstances disclosed by the record in this case, sufficient ground for setting aside the sale.

In regard to the fifth paragraph it is sufficient to say that there is no evidence in the record to suggest that the fact that the company's petition in the case in which the trust estate was being administered was pending at the time of the sale in any manner effected the sale of the property. In the absence of some evidence tending to show that a probable bidder refrained from bidding because of the pendency of said proceedings the Court would not be justified in concluding that but for said proceedings the property would have been sold for a higher price.

A motion was filed to dismiss the appeal on the ground that the record was not transmitted to this Court in time. The affidavits of counsel show that the delay was not caused by their neglect or by the neglect of the appellant.

It follows from what has been said that the motion must be overruled, and that the order appealed from must be affirmed.

> *Motion to dismiss overruled and order affirmed, with costs.*