# HENRY SHIRK

## vs.

# OAK STREET PERMANENT BUILDING AND LOAN ASSOCIATION.

*Mortgage Sale—Statement of Account—Resale—Inadequacy of Price.*

That in an account, stated by the auditor in connection with a mortgage sale, and ratified by the court, the trustee who made the sale was charged with the full amount of the price at which the property was sold does not relieve the purchaser from liability for any part of such price which he has failed to pay.

p. 321

Mere inadequacy of price, standing by itself, is not sufficient to vacate a mortgage sale, unless it be so gross and inordinate as to indicate fraud on the part of the trustee and purchaser.

p. 323

In case the purchaser fails to pay the entire purchase money, the court may, upon application of the trustee, decree a resale of the property, at the purchaser's risk.

p. 323

*Decided January 11th, 1921.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Henry Shirk,* with whom were *Richard B. Tippett & Son* on the brief, for the appellant.

*Charles C. Wallace,* with whom was *Edward M. Hammond* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the court.

The three orders appealed from in this case are: (1) the order of the Circuit Court of Baltimore City, dated January 13th, 1920, dismissing exceptions to and ratifying the auditor's account; (2) the order of said court, dated January 14th, 1920, dismissing exceptions to and ratifying a sale of certain leasehold property made by the trustee at the risk of the appellant, to whom the property had been previously sold, and (3) the order of said court, dated January 14th, 1920, dismissing the petition of the appellant to have the trustee removed, etc.

The proceedings in the case were begun in January, 1915, by a petition in the Circuit Court of Baltimore City for a decree for the sale of the leasehold property in Baltimore City, known as No. 1624 St. Paul Street, in pursuance of the terms of a mortgage from the appellant to the Oak Street Permanent Building and Loan Association of Baltimore City, dated July 3rd, 1912, and containing the usual assent of the mortgagor to a decree. A decree was accordingly passed on the 26th of January, 1915, and John L. Cornell was appointed trustee to make the sale. The property was sold by the trustee at public sale on the 6th of April, 1915, to the mortgagor, the appellant, as the highest bidder, for the sum of $500, subject to an annual ground rent of $141, upon the following terms: one-third cash, and the balance in six and twelve months, the "credit payments to bear interest from the day of sale, and to be secured to the satisfaction of the trustee," and the sale was reported to and was finally ratified by the court on the 10th of May, 1915. Thereafter an account was stated by the auditor on the 12th of May, 1915, from which it appeared that the mortgage claim was $707.43; that the commissions, costs, taxes to April 6th, 1915, ground rent and other expenses amounted to $176.20 more than the proceeds of sale, and that the amount due by the mortgagor to the mortgagee was $883.63. Exceptions to the account were filed by the mortgagor, and on the 8th of June, 1915,

the account, with the exception of two small items, was finally ratified by the court, leaving the balance still due to the mortgagee $830.85.  On the same day the mortgagee filed a petition for a decree *in personam* against the mortgagor for the sum of $830.85.  On the 17th of June the mortgagor filed a petition asking the court to vacate its order ratifying the auditor's account, and on the 29th of June filed his answer to the petition for a decree *in personam,* but the court, on the 15th of July, 1915, passed a decree against the mortgagor for $835.83, with interest from the date of the final ratification of the auditor's account.  On the 10th of September, 1915, an attachment was issued on said decree and laid in the hands of a garnishee, and on the 5th of April, 1916, an order was filed by the mortgagee's attorney directing the clerk to enter the decree *in personam* "satisfied."  On the 17th of April, 1916, John L. Cornell, trustee, filed a petition setting out the sale of the property to the mortgagor upon the terms we have mentioned, and alleging that the purchaser had only paid $166.66 on account of the purchase-money; that he, the trustee, had collected rent from the tenant occupying the property to the amount of $250.12; that the taxes, ground rent, water rent, etc., that had accrued since the sale were greater than the amount of rent collected, and praying that the purchaser be decreed to pay the balance of the purchase-money with interest thereon, and that in default thereof the property be sold at his risk.  In pursuance of an order of court the purchaser answered said petition, and alleged that taking the day of sale as the date of settlement, he had overpaid the amount of the purchase-money; that the trustee had been allowed by the court to collect the rents from the property in lieu of the purchaser giving his notes for the deferred payments; that in addition to the $166.66 paid by him and the amount the trustee admitted he had collected on account of rents, there was another installment of rent due on May 1st; that in the adjustment of expenses on the property to the day of sale the trustee should allow the

sum of $22.50 as his proportion of the taxes for the year 1915, and should also allow the sum of $59.55, "the proportionate part of the ground rent due" on May 1st, 1915, and prayed the court to pass an order allowing him to collect the rents; referring the papers to the auditor to state an account; requiring the trustee to make a deed to him, and dismissing the petition of the trustee. On the 26th of May, 1916, the purchaser filed an additional answer in which he denied that the trustee was liable for taxes, ground rent, and water rent accruing after the sale of the property, and alleged that he had "tendered to the said trustee a bond of the United States Fidelity and Guaranty Company against any such liability," but that he had refused to make a deed to him for the property. On the 13th of October, 1916, the court passed an order requiring the trustee to execute a deed to the appellant for the property, provided the appellant filed with him a bond executed by himself and the United States Fidelity and Guaranty Company in the penalty of $250, "conditioned for the payment of all expenses accrued on the property * * * between the 26th day of January, 1915," and the day on which the property was conveyed, and which had not theretofore been paid. After several other petitions of the purchaser and answers of the trustee, from which it appears that the purchaser never executed the bond referred to and the property was never conveyed to him, an account was stated by the auditor of the court and filed in the case on the 15th of February, 1919, in which the trustee was charged with all amounts collected by him or coming into his hands from the date of his appointment, and allowed for all payments made by him, and which showed an overpayment by the trustee of $3.79. On the 14th of March, 1919, the appellant filed exceptions to this audit on the following grounds:

"1. Because the auditor has included and charged in said account an item of 24.00 dollars and 58 cents, the proportion of taxes for the year 1915, which had already been charged against your exceptant in the

auditor's account filed in said cause on the 12th day
of May, 1915.

"2.    Because there has been charged against your
exceptant in like manner an item of two dollars and
forty cents, being the proportion of water bill for the
year 1915, and afterwards the entire water bill for
that year, and again charged against your exceptant.

"3.    Because an item of sixty-one dollars and ten
cents was charged against your exceptant in the audi-
tor's account filed on the day aforesaid, and afterwards
the six months' ground rent was again charged against
this exceptant.

"4.    And for other reasons to be assigned at the hear-
ing of these exceptions."

On the 30th of June, 1919, the trustee filed another peti-
tion in the case, setting out the sale made by him to the appel-
lant, and alleging that the appellant had only paid $166.66
on account of the purchase-money; that the appellant had
failed to comply with the order of court of October 13th,
1916, directing a conveyance of the property to him upon
his furnishing a bond in the penalty of $250; that the trus-
tee had, in accordance with the suggestion of the court, pro-
ceeded to collect the rents from the property and to apply
them to the payment of costs and expenses accruing against
the property as shown by the last account of the auditor; that
the taxes for the years 1916, 1917, 1918 and 1919 were un-
paid to the amount of $382.77; that there was due the owner
of the ground rent about $300, and that the attorney of the
owner of the ground rent had notified him that he would
hold him personally responsible for the expenses accruing
against the property during the time he held it as trustee, and
praying that said purchaser be required to pay the balance
of the purchase-money, and the expenses that had accrued
against the property, and that in default thereof the property
be decreed to be sold at his risk.    The appellant answered
this petition and resisted the relief therein prayed, but on
the 19th of August, 1919, the court below, with the assent

of the appellant, passed a decree for a resale of the property
at his risk after September 10th, 1919. The property was
accordingly resold at public sale on the 23rd of October,
1919, to Annie L. Walburg and Frank X. Walburg, as the
highest bidders, for $2,600, and the sale was duly reported
to the court. On the 29th of November, 1919, the appellant
filed exceptions to this sale on the following grounds:

"1.    That the entire amount of the mortgage indebt-
edness had been paid before the decree of this honor-
able court was passed to resell the property, at the risk
of the former purchaser.

"2.    That the court had no right or jurisdiction to
decree a resale of the same.

"3.    That there were only a small amount of back
ground rent and back taxes due on said property when
the said decree was passed in this case, and two hun-
dred dollars in the hands of the trustee to pay these,
which your exceptant is ready and willing to pay if
allowed by this honorable court to do so.

"4.    That the above court had no right to decide a
question and decree a resale not relating to the mort-
gage debt, and between persons who were not parties
to the suit.

"5.    That the said property is abundantly liable for
the payment of the amount of back taxes and ground
rent which are at present due and owing on the prop-
erty.

"6.    And for other reasons to be assigned at the
hearing of these exceptions, including inadequacy of
price."

On the 10th of December, 1919, the appellant filed a peti-
tion in the court below asking that the trustee be removed.
The petition was answered by the trustee on the 27th of
December, 1919, and on the 12th of January, 1920, the ex-
ceptions to the auditor's account filed of February 15th, 1919,
the exceptions to the sale to Annie L. Walburg and Frank
X. Walburg, and the petition for the removal of the trustee

were heard and submitted on testimony taken before the court, and were disposed of by the three orders involved in this appeal to which we have already referred. ·

We have set out the proceedings at some length in order to show the precise questions with which we are here concerned.

A careful examination of the testimony fails to disclose any evidence in support of the exceptions to the audit. In the first account of the auditor, filed in May, 1915, shortly after the sale of the property to the appellant, the trustee was charged with the entire purchase-money of $500, and after allowing for costs and expenses and for taxes and other charges to the day of sale, the account showed an overpayment or shortage of $176.20, which added to the mortgage debt made the amount due by the mortgagor to the mortgagee $883.63. This audit, as we have said, was ratified on the 8th of June, 1915, except as to certain small items, making the amount due the mortgagee $830.85. While in that audit the trustee was charged with the entire purchase-money, the appellant as the purchaser had in fact only paid the first installment of $166.66, and as he was unable to give the security required by the terms of the sale for the remaining two-thirds of the purchase-money, he entered into an arrangement with the trustee, which was apparently sanctioned by the court, by which the trustee was to collect the rents from the property and to apply the same, after, of course, paying the accrued and accruing charges, etc., against the property, to the payment of the balance of the purchase-money. In consequence of the numerous petitions filed by the appellant and the answers thereto of the trustee, the second account of the auditor was filed in February, 1919, in which, as we have said, the trustee was charged with all money collected or received by him from the date of his appointment and credited with all sums paid out, and which showed an overpayment by the trustee of $3.79, and that no part of the deferred payments of the purchase-money had been paid by

the appellant.  In his testimony the appellant did not refer
to the particular items mentioned in his exceptions to the
account, or state definitely in what particular the audit was
incorrect or erroneous, but said that at the time the decree
for a resale of the property was passed the trustee owed him
$400, enough to pay the taxes and ground rent due on the
property, without stating how such indebtedness arose, or
of what items it was composed.  There is nothing in the evi-
dence to account for this statement, unless it was based upon
the erroneous theory that as the trustee, in the *first account,*
was charged with the entire purchase-money of $500, he
could not afterwards demand any part of it from the appel-
lant, notwithstanding the appellant had only paid $166.66.
The first account was stated for the purpose of ascertaining
what part of the proceeds of sale, if any, would be applicable
to the payment of the mortgage debt, and was based upon the
assumption that the entire purchase-money would be paid,
but it was not intended to operate as, and cannot be given the
effect of, a discharge or release of a defaulting purchaser.
John L. Cornell, the trustee, testified that the account was a
correct statement of the funds collected and disbursed by him
from the time he was appointed trustee to the date the ac-
count was filed, February 15th, 1919; that he had gone over
the matter frequently with the appellant and his various rep-
resentatives, including attorneys and auditors; that these at-
torneys and auditors had stated in the presence of the appel-
lant that the account was correct, and that at the time of the
decree for a resale of the property there was due on account
of ground rent $381.91, and that the taxes for the years
1916, 1917, 1918 and 1919 and other charges against the
property were due.

In support of his exception to the sale on the ground of
inadequacy of price, the appellant testified that the property
was worth from $3,000 to $3,500, but he admitted that he
was present at the sale with his attorney, who was ready and
willing to "put up" the money to buy the property, and said

he did not know how much his attorney bid for it.   Mark W.
Wright, a witness for the appellant, testified that he was, "in
a way," in the real estate business; that he knew the prop-
erty, and while he could not tell what it was worth, he thought
it ought to be worth $3,500 in the market "today."   On cross-
examination he stated that he knew nothing about the condi-
tion of the property.   Mrs. Annie L. Walburg, who purchased
the property at the sale objected to and who was called by the
appellant, testified that if she had seen the condition of the
house she would not have purchased it, and that she had paid
out $800 for repairs; that when the appellant approached
her after the sale with the view of inducing her to give up
the house, she told him that he would have to give her an
advance of $1,000, but that at that time she had already
made arrangements with men to repair the house.   On cross-
examination she testified as to the condition of the house and
that she had spent $800 for repairs; that she purchased No.
1618 St. Paul Street for $3,000 about a month before she
purchased the house in question, and that No. 1618 was in
very much better condition than No. 1624, and the ground
rent on No. 1618 was $135; that the appellant offered the
house to a Mrs. Groves about a month before the sale for
$2,000; that there were lots of men at the sale who did not
"overbid" her, and among them the appellant and his attor-
ney, who told her all about the house on the day of sale, but
that if she had seen the condition of the house she "would
not have given that price."   The trustee testified that the
appellant, and his attorney, Mr. Tippett, were present at the
sale, and told him that they were there "for the purpose of
bidding unless the property brought more than it was worth";
that there "were a number of people present and there was
quite a lot of bidding," and that he was sure that the prop-
erty brought all it was worth at the time.   This evidence was
clearly not sufficient to justify the court below in setting
aside the sale.   Even if we were of the opinion that the price
at which the property was sold was less than its real value,

that would not be sufficient ground for vacating the sale, for the settled rule in this State is "that mere inadequacy of price, standing by itself, is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate fraud or misconduct on the part of the trustee and purchaser." *Garritee* v. *Popplein,* 73 Md. 322; *Hunter* v. *Highland Land Co.,* 123 Md. 644; *Holton Park Co.* v. *Gary,* 133 Md. 509.

The only other objection to the sale was that the court below had no jurisdiction to decree a resale of the property because the mortgage debt had already been paid. It is true that the mortgagee had, as we have said, recovered under the attachment issued on the decree *in personam* the amount due on the mortgage, but the amount of that decree was ascertained by charging the trustee with the *whole* of the purchase-money under the sale to the appellant in 1915, and as the appellant only paid one-third of the purchase-money, and failed to pay the balance, the court below, upon the application of the trustee, had ample authority in default of said payments to decree a resale of the property at his risk. The appellant's assent to the decree amounted to a waiver of any irregularities, and the only possible question open under this exception was as to the *jurisdiction* of the court below, in regard to which we have no doubt.

There was no evidence in the case in support of the petition for the removal of the trustee, and it appears from the appellant's brief that he was accidently killed in July, 1920, and that a new trustee had been appointed in his place.

It follows from what has been said that the orders appealed from must be affirmed.

*Orders affirmed, with costs and cause remanded.*