# FRANK B. TALBOTT, Exceptant,

*vs.*

# THE MARYLAND SILICITE COMPANY et al.

*Sale Under Mortgage—Adequacy of Price—Fixtures.*

The price obtained at the sale under a mortgage of a silicite mine and plant *held* not to be shown to be grossly inadequate so as to justify the setting aside of the sale. pp. 655, 656

A requirement in a mortgage that, for the purpose of a sale thereunder, twenty days' notice should be given in some newspaper in the county, was more than satisfied by an advertisement of the sale for three successive weeks in two newspapers published in the county, accompanied by the posting and distribution of handbills. p. 657

Where a mortgage of land on which was a mining and manufacturing plant, included in terms all tools, machinery, appliances and equipment on the land and used in the conduct of the business, a sale under the mortgage was not open to exception because there was no specific mention of the tools, chattels and utensils, there being no evidence as to whether these articles were such as would or would not pass under the mortgage or sale, nor any evidence that the property brought less by reason of any personal property not being more definitely described. pp. 657-659

*Decided January 18th, 1924.*

Appeal from the Circuit Court for Calvert County, In Equity (Briscoe, C. J.).

Exceptions by Frank B. Talbott to a sale, made to Trevor M. Caven, under a mortgage made by the Maryland Silicite Corporation to the Maryland Silicite Company. From an order overruling the exceptions, said exceptant appeals. Affirmed.

The cause was submitted on briefs to Boyd, C. J., Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*James W. Owens,* for the appellant.

*John B. Gray & Son,* for the mortgagee.

*J. Briscoe Bunting,* for the purchaser.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from an order ratifying a sale made by John B. Gray, attorney named in a mortgage given by the Maryland Silicite Corporation, a body corporate, incorporated under the laws of Maryland, to the Maryland Silicite Company, a corporation incorporated under the laws of New York. The sale was duly reported to the court, an order *nisi* passed, and exceptions filed by Frank B. Talbott, a judgment creditor of the mortgagor. The reasons assigned for excepting to the sale are:

"1. That the price obtained for said property was grossly inadequate.

"2. That the sale was not so advertised as to bring the best results.

"3. That the mortgage in these proceedings, while after mentioning the real estate conveyed, said (practically), 'and all the machinery, tools, chattels and other personal property on said property used in the prosecution of the business carried on therein.'

"4. Because the chattels and utensils were not specifically mentioned, but that in the mortgage which was recorded among the land records, and not in the chattel records, there was no specific mention of these tools, chattels and utensils, and it further provided for the sale of any goods, chattels or utensils substituted for those then in possession, when the same should become useless.

"5. And for other reasons to be shown at the hearing."

There is no evidence in the record that the price obtained for said property was grossly inadequate. The exceptant himself was the only witness produced on that subject. He was asked, "How many acres of land are in the tract and what improvements?" and answered, "About 120 acres improved by one six-room house and one barn." He was then asked, "What is the value of it as a farm?" and replied, "About $5,000." Mr. Talbott was local manager of the corporation, and as such had charge of mining, drying, shipping and grinding of the product. He was asked the cost of production per ton, and said, "About $12.00," and then in reply to what was the sales price per ton, said "$17.50 f. o. b. plant." He stated that they had shipped the last year of work about three hundred tons and he was informed by Mr. Weed, who had a controlling interest in the old company and sold to the new company, that he used to ship several thousand tons per year. When asked how he accounted for the falling off in the shipments, his reply was, "Because the company did not furnish sufficient means to work the mines." He also said that all orders were not filled, "because there was no stock on hand and no money for production." He did say that in his opinion the amount of silicite that could be mined was "almost inexhaustible."

When asked, "What is your opinion of the value of this property, if financed and worked?" he said: "My opinion as local manager is that if the plant is properly financed and worked, would produce a large income, but the present company did not finance it to produce these results." As he said he was to get $150 a month as manager, and the last year of work there were about three hundred tons shipped, at a profit, according to his figures, of $5.50 a ton, f. o. b. plant, it would seem that a sale of the property at $10,500, subject to a prior lien of $1,500, was not a grossly inadequate price. The property did not bring enough to pay off the mortgage in full. There is no evidence on the subject of the value except that of Mr. Talbott, referred to above, and there can be no doubt that there is no evidence which would under

the authorities justify the court in setting aside this sale on the ground that the price obtained was grossly inadequate.

Nor is there any evidence to sustain the second exception—that the sale was not so advertised as to bring the best results. The mortgage provided for giving twenty days' notice in some newspaper published in Calvert County, and such other notice as by the mortgagee, its successors or assigns, may be deemed expedient. The report of sale shows that the sale was advertised for at least three successive weeks in two newspapers published in Calvert County, and further notice by hand bills posted in conspicuous places and distributed by mail and otherwise. No evidence is offered to show that advertising in any other way would have produced different results—much less, sufficient to justify the court to set the sale aside on that ground. The advertisement was more than the mortgage required.

We will consider the third and fourth reasons together. There is nothing to show that anything could have been accomplished by specifically mentioning the "chattels and utensils," as they are spoken of. In the mortgage the real estate is described, and then it proceeds—

> "and also all tools, machinery, appliances and equipment now on said land, or which may hereafter at any time during the existence of this mortgage be annexed to said land or used thereon by the mortgagor in the conduct of its business."

The usual provision to be found in mortgages, that until default the mortgagor can possess the property, upon paying in the meantime the taxes, mortgage debt and interest, etc., are in this one, and the mortgagor covenanted to pay them when legally demandable, and then this follows:

> "And it is agreed that while so in possession of said property, said Maryland Silicite Corporation, its successors or assigns, may operate the silicite mines therein, but shall not remove from said property nor dispose of any machinery, tools, appliances or equipment used in connection with said mines."

The report of sale follows very closely the terms used in the mortgage, in reference to such property.

While we are not called upon in this case to determine whether there were any particular articles included in the mortgage or in the sale which could not be or were not sold, and there is no evidence on that subject to explain in particular what the items or articles were, or what is required in mines of that kind, yet it is well known that in mortgages and sales of some kinds of mines, factories, plants, etc., many things, certainly in modern times, are, as between mortgagor and mortgagee, considered fixtures or such as go with plants, which originally might not have been so treated. For example, in *Dudley* v. *Hurst,* 67 Md. 44, quoting from the syllabus for convenience, it is said:

"Machinery used in the canning business, parts of which are attached to the soil, and other parts are necessary to the parts so attached, is a fixture, and as between the mortgagor and mortgagee of the land upon which it is erected, will pass to the latter. Where in the case of machinery, the principal part becomes a fixture by actual annexation to the soil, such part of it as may not be so physically annexed, but which if removed would leave the principal thing unfit for use, and would not of itself and standing alone be well adapted for general use elsewhere, is considered constructively annexed."

JUDGE STONE, in speaking for the Court in that case, after giving some illustrations, said: "In this case there are some articles not *actually annexed* to the soil, such as crates, capping machines and work tables, but are essentially necessary to the working of the principal machinery, and pass by constructive annexation. The main machinery would not be in working condition without them, and they are not adapted for general purposes."

See also JUDGE THOMAS' opinion in *Warren Mfg. Co.* v. *Baltimore,* 119 Md. 188, 204; 19 *R. C. L.,* 627, par. 443, title "Mortgages; 11 *R. C. L.* 1073, par. 18, title "Fixtures"; and there are many other authorities which might be cited, but as there is no evidence in this case on the subject which

would enable us to determine whether any of the articles are of the kind that would or would not pass under the mortgage or sale, it would be useless to refer to them.    There is, moreover, no evidence to show that the property brought less than it would have done by reason of any personal property not being more definitely described or mentioned.

The appellant also charges collusion, although not named in the exceptions filed, but we find no evidence to sustain that charge.

We have thus given the exceptions such consideration as we thought proper, and we do not deem it necessary to refer to the authorities as to what is regarded as such inadequacy in price as calls upon the court to interfere, as in this State the rule is too well settled and too familiar to need the citation of authorities.

It follows from what we have said that the order of the court finally ratifying and confirming the sale must be affirmed.

*Order affirmed, the appellant to pay the costs.*