MARY DODGE LEWIS ET AL. *v.* WILLIAM L. BEALE ET AL., TRUSTEES.

[No. 88, October Term, 1931.]

19

*Decided January 14th, 1932.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Albert M. Bouic,* for the appellants.

*William F. Prettyman,* for the appellees.

Parke, J., delivered the opinion of the Court.

On December 6th, 1927, Mary Dodge Lewis became indebted to the American Security & Trust Company in the sum of $8,500, and she and her husband, H. Latané Lewis, secured the debt by executing a deed to William L. Beale and George W. Brown conveying a parcel of land, containing 1.424 acres of land, situated in Montgomery County, upon certain trusts and terms and conditions therein set forth. Among these provisions was one for a sale of the premises by the trustees upon default being made in the payment of the principal and interest of the debt when due. The trustees made sale under this power and filed their report, and thereafter the debtor and her husband excepted to the ratification of the sale because of an alleged (1) gross inadequacy of price and (2) improper and insufficient advertisement of the sale. The chancellor heard the testimony, overruled the ex-

ceptions, and finally ratified and confirmed the sale by a decree from which this appeal is taken.

1. The power conferred upon the trustees was to sell the land and premises at public auction, upon such terms and conditions, in such parcels, at such time and place, and after such previous public advertisement, as the trustees should deem advantageous and proper. In the exercise of their discretion under this power, the trustees determined the terms and conditions, time, and place and manner of sale, and gave notice thereof by an advertisement inserted in "The Montgomery Press," a newspaper published in Montgomery County, for more than three weeks prior to the day of sale; and by sending handbills to such persons as the trustees believed might be interested in the sale. The manner and length of time of the notice by publication, in the local newspaper where the land is located, were sufficient to gratify the requirements of the statute. Code, art. 66, sec. 8; *Shaw v. Smith,* 107 Md. 523, 69 A. 116; *Evans Marble Company v. Abrams,* 131 Md. 204, 101 A. 964; *Edgecombe Park Co. v. Finney,* 121 Md. 320, 88 A. 143.

Nor were the contents of the advertisement inadequate. The ownership, street and number, and area, are given, and a precise reference is made to the deed of trust from the debtor and her husband to the trustees, with its date and place of record, for a complete description of the land. In addition, the approximate frontage of the premises on the Georgetown Turnpike, and its depth, are stated in feet, an adjacent landowner is named, as are the nearly opposite premises of the Bank of Bethesda, the Masonic Hall & Library Association, and Dr. Benjamin C. Perry. The improvements are stated to be a comfortable and attractive bungalow of eight rooms and a bath, and a garage to hold two automobiles. The advertisement further points out that the sale is of a valuable, high-class residence, located in one of the best sections of the Metropolitan District of Montgomery County and within two miles of the line of the District of Columbia.

The exceptants argue that attention should have been called by the advertisement to the circumstance that the residence

is within that section of the Metropolitan District which is classified as "first commercial zone."

The testimony shows that only that part of the lot which fronts on the highway for about 94 feet and to the depth of 150 feet is within the section classified as commercial, and therefore over three-fourths of the lot is within the residential zone. There is, also, a conflict of opinion whether a nominal commercial classification, which does not correspond with the real situation, has any appreciable effect on the present market value of a property whose improvement and actual use properly place it in a residential classification. The advertisement plainly and accurately located the premises, and described the nature of its improvements and of the neighboring property, so that any prospective purchaser would have been informed, or put in possession of the facts from which the information could have been readily obtained, how the property was zoned by the Metropolitan District of Montgomery County, and what effect that circumstance would have upon its value.

The witnesses who testified to the value of the property differ widely in their estimates. They range from $20,000 to $30,000, on the part of the exceptants, and from $10,000 to $14,000 in behalf of the trustees. The difficulty in relying on testimony of this nature is that there is usually no adequate standard with which to measure the value of a particular piece of property, in a neighborhood where transactions in land are few and unrelated. A specific portion of land is seldom so similar in area, location, adaptability, improvement, use, and physical condition as to constitute a unit of a comparable class; and the bias, knowledge, experience, and capacity of a witness who may testify with respect to the value of land are so inconstant, yet play so large a part in reaching a conclusion which, if correct, must accord due weight to such important, although variable factors as financial conditions, the movement of population, and the subsisting supply and demand, that an opinion on the value at a given time of a particular portion of land, especially if situated in a neighborhood of infrequent sales, is frequently of no

great weight. The testimony before the court differs so greatly that the inherent defects of this kind of expert evidence are exemplified, and the court would have a much more difficult question in analysis and weight of testimony, if its problem were to determine from conflicting estimates of expert witnesses the fair market value of the mortgaged premises at the time of the sale. The sale, however, was made as authorized by the deed, and, as has been here determined, the notice by advertisement was properly given, and no objection is disclosed by the record to the time, place, manner, or terms of the sale, so the only ground of objection to be decided is whether or not the purchase price of $9,900 is so grossly inadequate that misconduct or fraud on the part of the trustees or purchaser is shown. *McCarty v. Hamburger,* 112 Md. 40, 44, 75 A. 964; *Vollum v. Beall,* 117 Md. 617, 620, 83 A. 1095; *Edgecombe Park Co. v. Finney,* 121 Md. 320, 326, 88 A. 143; *Hunter v. Highland Land Co.,* 123 Md. 644, 647, 91 A. 697; *Boyd v. Smith,* 127 Md. 359, 364, 96 A. 526; *Evans Marble Co. v. Abrams,* 131 Md. 204, 206, 101 A. 964; *Holton Park Co. v. Gary,* 133 Md. 509, 518, 105 A. 751; *Cockey v. Hampson,* 140 Md. 551, 556, 118 A. 72; *Shirk v. Oak Street Bldg. Ass'n,* 137 Md. 314, 323, 112 A. 808; *Herman v. Mondawmin Bldg. etc. Co.,* 145 Md. 480, 484, 125 A. 814.

There is no proof of any misconduct or wrongful act by either the purchaser, the trustees, or the mortgagee, in connection with the sale, and it is firmly established by many decisions that mere inadequacy of price, unless so gross as to indicate fraud or misconduct, is not sufficient to cause the court to vacate a mortgage foreclosure sale. *Supra.* There is no evidence in this cause to justify the inference that the trustees did not reasonably endeavor and act to obtain the full value of the property. The sale was had on the premises, and was attended by a number of persons, who heard the sale called and fairly cried, with unhampered opportunity to bid. The bidding was started at $9,000, and advanced by competitive bids until the final bid of $9,900 was offered and accepted. The purchase price may not be the market value of

the property, but a fair sale at public auction is one of the best evidences of actual value. It was the method specified in the deed of trust, and thereby entered into the contractual relation of the mortgagors and mortgagee. The agreed remedy was a condition upon which the loan was obtained, and was a part of the mortgage security, and the mortgagors necessarily contemplated that a sale involved the probability that the price received for the property would not be its full market value, because the purchase price at public auction would be obtained by a compulsory or forced sale, which would not fulfil the prerequisites for the determination of a fair market value, which assumes an agreement on the price of the land resulting from a treaty between an owner willing, and not obliged, to sell, for cash, and a buyer desirous, but not compelled, to purchase. 2 *Lewis on Eminent Domain* (3rd Ed.), sec. 706; 4 *Sutherland on Damages* (4th Ed.), sec. 1064.

The fact that the court must consider the question at bar with reference to the circumstance that the standard is that of a forced sale, fairly made, rather than that of a voluntary sale by the owner, is due to the default of the debtor, who must assume the agreed consequences of the default. If the sale take place during a period of financial depression, or of depreciation in the value of land, or of other adverse general conditions for which neither party is responsible, and hardship thereby result, it is a consequence which must be borne as an incident of the contract, and the court cannot relieve one party to the contract without violating the contractual right of the other. *McCarty v. Hamburger,* 112 Md. 40, 45, 75 A. 964. Unless there be fraud or misconduct, a mere inadequacy of price will not be sufficient to vacate the sale. The court cannot accept the high valuation placed upon the property by some of the witnesses, and is convinced that they were mistaken, and that there is no such inadequacy in price as would, under the precedents and principles of equity controlling this decision, justify setting aside the sale, because (a) the price obtained was at a public auction fairly made and in good faith, (b) the bid accepted was the final offer in competitive bidding, in the presence of the holder of a second

mortgage lien on the property, who, although afforded an opportunity to protect his lien by purchase, made no bid on the property, (c) the mortgagors defaulted in their obligation, instead of paying off the mortgage debt by funds procured by a new mortgage, and (d) finally no one was prevented from bidding, and the record does not show that, if the sale were set aside, there is any one who would buy the property at a substantial advance in price, and who would be able and ready to pay for the property on the terms of sale under which it was offered. *Supra; Knapp v. Knapp,* 149 Md. 217, 221-222, 131 A. 327.

As our conclusions are in accord with those of the able and informed chancellor who sat in this cause, his decree dismissing the exceptions and finally ratifying the sale will be affirmed.

*Decree affirmed, with costs to the appellees.*