## CHARLES W. LIPPOLD, ET AL. *v.* WALTER W. WHITE

[No. 36, January Term, 1943.]

*Decided March 17, 1943.*

The cause was argued before DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Horace P. Whitworth,* with whom was *William S. Jenkins* on the brief, for the appellants.

*William A. Gunter* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Joseph H. Lippold died on April 7, 1922, seized of a farm located in Allegany County, near the City of Cumberland. By his will, he devised this to his wife, Regina C. Lippold, for life, with power to sell and convey in fee during her life and with remainder to his children and grandchildren. During her lifetime, Regina C. Lippold sold and conveyed this farm to her three sons, Charles W. Lippold, Louis A. Lippold and Henry P. Lippold, appellants, for the sum of $25,000. Nothing was paid by the purchasers, but they executed a mortgage on the property to the said Regina C. Lippold for the full sum of $25,000, with interest at 6 per cent. per annum. No interest nor any part of the principal was paid on the mortgage debt.

Regina C. Lippold died in November, 1940, and the mortgage passed to the next of kin of Joseph H. Lippold, who included the three aforesaid mortgagors, four other children, two grandchildren who were the children of a deceased son. After the mother's death, the heirs had a family conference in an endeavor to reach some agreement in reference to the mortgage. This conference ended in a disagreement. No settlement was arrived at and, after a long period of time, the mortgage was assigned to Walter C. Capper, an attorney of Cumberland,

who entered foreclosure proceedings. After due advertisement, he sold the farm at public sale to Walter W. White, appellee, for the sum of $25,100. The sale was reported to the court in the usual manner. Exceptions to the ratification of the sale were filed by Charles W. Lippold, Louis A. Lippold and wife, and Henry P. Lippold and wife, appellants' mortgagors.

These exceptions substantially alleged that any deficiency in the payment of the mortgage would be an obligation of the three mortgagors; that the remaining heirs were willing to settle the mortgage by the payment to them of $25,000 and their counsel submitted this offer of settlement to the attorney for the three mortgagors; that, although the appellants had instructed their attorney of their desire to pay this amount of $25,000 to the others in interest, he advised them not to make such an offer and in spite of the instructions to him, he neglected and refused to communicate this offer of settlement to the attorneys for the other heirs; that the appellants were informed by their attorney that, in order to settle the mortgage, it would be necessary for them to pay the full sum of $40,000. They further alleged that the appellants desired to attend the mortgage sale and to bid at least the sum of $40,000 for the property; that their counsel advised them to stay away from the sale and not to confer with their brothers or sisters about it and advised them to come to his residence at the time of the sale and he would have a Mr. James Perrin, a realtor, bid for them; that they placed in the hands of their attorney approximately $9,000 necessary for a down payment on the property. After several telephone conversations between their counsel and his representative at the sale, they were informed that the bidding had reached $25,000 and that they then informed and instructed him to have bids of $50 each placed on the property as the bidding continued, but in spite of these instructions, he shortly thereafter came from the telephone and told them that the property had been sold

for $25,200, while the report of sale shows that the highest bid was $25,100. They further stated that they were willing at the time of the filing of the exceptions to pay the sum of $40,000 for the farm, and were willing to bring into court the sum of $25,000 to be paid over to the heirs. Answer to the exceptions was filed by Walter W. White, the appellee here, in which he denied any knowledge or information as to the matters set up in the exceptions; that he purchased the property for the sum of $25,100, had paid $5,000 on the purchase price and had agreed to pay the balance upon ratification of sale. He further stated that the facts and things set forth in the exceptions constituted no good, sufficient or legal reason why the court should not ratify the sale; that the sale was conducted in a fair, honest and efficient manner and asked that the exceptions be overruled. After hearing in open court, the chancellors, by order, overruled the exceptions and an appeal is taken to this court from that order by Charles W. Lippold, Louis A. Lippold and wife and Henry P. Lippold and wife.

The testimony shows that the three mortgagors employed an attorney, a member of the Allegany County Bar, to represent them, with the endeavor to reach a compromise settlement with the remaining four brothers and sisters and the children of their deceased brother. These remaining heirs also employed an attorney, F. Brooke Whiting, of Cumberland, to represent them. After employment of counsel by both parties, numerous conferences were held by the attorneys. The attorney for the appellants testified that Mr. Whiting, the attorney for the other heirs, submitted an offer to settle the mortgage by the three appellants paying $4,000 to each of the remaining five heirs. This offer is not denied by the appellants, although Charles and Henry say that they cannot remember it. Louis said he knew the offer was made. The attorney for the appellants then wrote a letter to Mr. Whiting offering $3,000 to each of the five interests for settlement of the mortgage claim. This

offer was refused. Shortly after this time, the remaining heirs terminated their employment of Mr. Whiting and Walter C. Capper was employed in his place. In June, 1942, Mr. Capper made an offer to the attorney for the appellants to settle the mortgage indebtedness, which was then approximately $44,000, for the sum of $40,000, which would have required the appellants to have paid $5,000 to each of the five other interests. The attorney for the appellants testified that he transmitted this offer to his clients, the mortgagors, and upon his recommendation, they rejected it. The appellants claim that this offer was never submitted to them and they were told that it was necessary for them to pay Mr. Capper $40,000 in cash. However, one of the appellants testified on cross-examination as follows:

"Q. What was said about the balance between $25,000 and the $40,000? A. There was nothing said about it.

"Q. Had he explained to you that you would be still liable for the $15,000 over and above the $25,000? A. He said by paying off the $25,000 and giving the girls, the other five heirs, the $25,000 would clear up that to the $40,000 figure."

Further, another appellant testified as follows on direct examination:

"Q. Did he tell you that out of that $40,000, $15,000 came back to you? A. No, he didn't.

"(By the court) Ask if he understood that he was entitled to it.

"Q. Did you understand that you were entitled to a one-eighth interest? A. Yes, to one-eighth, yes."

After the farm was advertised at mortgage sale, the three appellants consulted again with their attorney, and he suggested to them that, rather than appear at the sale, they come to his home, where there was a telephone, and he would have a real estate man, who later turned out to be Mr. Perrin, bid for them. He said: "I told them that I would rather they would stay away; that I wanted an outside bidder, a person that they knew and

the other side didn't know was bidding for them. They were under the impression that if their sisters knew they were bidding that their sisters might run up the bidding on them or else if the property went to them, that they would refuse the bids and that was one of the terms that any bid could be refused."

On the day of the sale, two of the appellants, namely Charles and Henry Lippold, arrived at the attorney's home. All of the appellants say that they instructed the attorney to bid up to $40,000 for the farm, while the attorney said: "I went back to the phone and told Mr. Perrin that I couldn't see how I could raise the bid above $25,000, and he said he believed he would raise it by the odd figure above $25,000, because lots of times buyers stick at the even figure, and as I remember, I authorized him to raise the bid to $25,050, and I shut down the phone and he went back to the sale, and I came back into the room and told them that I went up to $25,050 on the property and that it was all I thought I was authorized to go without Louis A. being present at the time."

He further testified that Henry and Charles did not authorize him to bid any more. He said: "Q. Who was it that suggested in the conference that the maximum bid be not more than $25,000 at the sale? A. I can't say now who it was, but I did tell them before all three that Alf told me that he was reluctant to go that high. That morning I had been in Alf's butcher shop and he admitted to me that he wasn't anxious to go any higher and also that he wasn't going to allow Henry to mortgage that farm to take care of his interest."

He testified that by Alf he meant Louis. A few days after the sale, the appellants dismissed their attorney and paid him a fee of $1,000 for services rendered.

There is no contention that the sale was not held in a proper manner or that fraud existed. The bids started at $10,000 and lasted for an hour and there were a number of different bidders for the property. The sole

contention of the appellants as to why the exceptions should be sustained is mistake and carelessness and neglect on the part of the attorney for the appellants, that appellants were not permitted to bid as much as they desired and that therefore the property was sold for an inadequate price. None of these allegations of neglect or misunderstanding are charged against the assignee of the mortgage or the holders of the mortgage. They are charged to the attorney for the appellants. According to the evidence, the estimated value of the property, obtained by the appellants from different parties, was from $21,000 to $30,000, and that is the only testimony as to value in the record. The appellants stress the fact that the interests of infants are involved. In the testimony, there is evidence that the appellants own other properties and their exceptions so alleged. From a reading of the record, it is very apparent that the appellants had ample opportunity to settle the other outstanding interest in the mortgage for $20,000 at the time Mr. Whiting was representing those other interests. Can they now complain? As hereinafter shown, they are the only complainants. From the testimony before us in this case, it is questionable whether there was a mistake or negligence on the part of the attorney or whether there was simply an unsuccessful effort on the part of the mortgagors to acquire the property as cheaply as possible, and after the mortgage sale, realizing their situation, they want the opportunity to reopen the bidding. The appellants in the case now before us have not proved the allegations of fact set forth in their exceptions, and therefore the chancellors were correct in overruling the exceptions to the sale. This court said in the case of *Clemens v. Union Trust Co.*, 170 Md. 520, at page 532, 185 A. 462, at page 468: "* * * exceptions upon questions of fact, in order to be sustained, must be supported by a preponderance of evidence sufficient to set aside the report of the trustee; which evidence should be all the more preponderating in a proceeding designed to annul a final

ratification of a sale. *Miller's Equity Proc.*, Sec. 509; *Roberts v. Loyola Perpetual Bldg. Ann's*, 74 Md. 1, 21 A. 684; *Haskie v. James*, 75 Md. 568, 23 A. 1030; *Vickers v. Tracey*, 22 Md. 196."

The only evidence of inadequacy of price is the fact that the appellants have offered $40,000 for the property now that they realize, under the present situation, they are liable for a possible deficiency judgment of over $15,000. This court has said on frequent occasions, where there is great disparity of price, the court will be astute in extracting from the facts sufficient to justify it in annulling the sale by reason of mistake, surprise or misconduct. Where there appears any other just cause to doubt the propriety of the sale, inadequacy of price may always be considered. Where a judicial sale has been regularly made in a manner prescribed by law, upon due notice, to justify an equity court in setting aside such sale upon the grounds of inadequate price, facts must be shown from which the conclusion arises that the price is so inadequate as to shock the conscience of the court and imply constructive fraud. *Chilton v. Brooks*, 69 Md. 584, 16 A. 273; *Shirk v. Oak Street Permanent Bldg. & Loan Ass'n*, 137 Md. 314, 112 A. 808; *Talbott v. Maryland Silicite Co.*, 144 Md. 654,, 125 A. 401; *Herman v. Mondawmin Bldg. & Loan Co.*, 145 Md. 480, 125 A. 814; *Kres v. Hornstein*, 161 Md. 1, 155 A. 171; *Lewis v. Beale*, 162 Md. 18, 158 A. 354; *Waters v. Prettyman*, 165 Md. 70, 166 A. 431; *Stallings v. Annapolis Savings Institution*, 167 Md. 4, 172 283; *Righter v. Clayton*, 173 Md. 138, 194 A. 819; *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A. 2d 830; *Suburban, Etc., Corp. v. Duckett*, 179 Md. 648, 22 A. 2d 467. As recently as January 13, 1943, Judge Delaplaine said in the case of *Bachrach v. Washington Co-operative, Inc.*, 181 Md. 315, 29 A. 2d 822, at page 826: "But mere inadequacy of price alone is not sufficient to set aside a sale, unless it be so gross and inordinate as to shock the conscience and raise the presumption of fraud, unfairness or lack

of judgment on the part of the mortgagee, or some misconduct or mistake for which the purchaser should be held responsible. *Condon v. Maynard,* 71 Md. 601, 18 A. 957; *Holton Park Co. v. Gary,* 133 Md. 509, 105 A. 751; *Chew v. Baker,* 133 Md. 637, 642, 105 A. 756; *Preske v. Carroll,* 178 Md. 543, 16 A. 2d 291." *Johnson v. Dorsey,* 7 Gill 269, 294.

The appellants refer us to a number of authorities outside of the State of Maryland. In the case of *Johnson v. Avery,* 60 Minn. 262, 62 N. W. 283, 51 *Am. St. Rep.* 529, where a sale was set aside, the property was worth not less than $8,000 and sold for $1,500. The sale was not properly advertised in the case of *Spinks v. Raison,* 144 Ky. 539, 139 S. W. 811. In *Campbell v. Gardner,* 11 N. J. Eq. 423, 69 *Am. Dec.* 598, 602, notice was necessary and through some mishap, the mortgagor was prevented from having actual notice of the contents of the process. Her property, worth $3,500, was sacrificed and sold for $500. She was an old woman and had no one to rely upon for advice. The purchaser at the sale was the mortgagee. In setting aside the sale, the court said that the case was not a strong one. In the case of *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556,, 85 *A. L. R.* 1477, 1479, decided in 1933, the court took judicial notice of the then economic depression and, finding the property worth over $2,000, set aside a sale made for $600. In *Dewey v. Linscott,* 20 Kan. 684, the mortgagee, a non-resident, employed an agent to bid up to $740 for the property. The agent was absent on account of a subpoena to attend as a witness in a criminal trial and the mortgagee was not otherwise represented at the sale. The property sold for $50. The testimony showed it to be worth $700 or $800. The court set aside the sale provided the mortgagee offer $725 as first bid. In *Lefever v. Kline,* 294 Pa. 22, 143 A. 488, where a sale was set aside, no description of the property was read at the sale, as was usual, and there were other irregularities. In the case of *Kremer v. Rudolph,* 105 Wis.

534, 81 N. W. 654, 655, where a judicial sale was set aside, there were certain irregularities justifying the court in so doing, which are not in point.

The purchaser, the appellee here, has certain rights as are clearly set out in the case of *Cook v. Safe Deposit & Trust Co.*, 172 Md. 398, at page 404, 191 A. 713, at page 716: "Once having accepted a bid, the executor or trustee cannot reopen the sale to let in disappointed or rival bidders. They are right about an accepted bid being an offer, but the seller is bound to report such a bid, and on ratification it becomes an enforceable contract. As said in *Whitely v. Whitely*, 117 Md. 538, 544, 84 A. 68, 71, 'The court should (not) * * * depart from the policy of encouraging purchasers at judicial sales by sustaining those fairly made in all respects, and for a full price, whether at public sale, or that failing, at private sale, and by refusing to strip a purchaser of a right fairly acquired, for a full consideration, merely because one who has had his day for free competition demands that he be given a second opportunity'."

Quoting from *Boyd v. Smith*, 127 Md. 359, at page 366, 96 A. 526, at page 528: "It would also, we think, be a dangerous and unsafe practice, and one not to be tolerated, to reject sales so made and reported, merely to let in other and higher bidders, when no fraud, misrepresentation, or unfairness is shown, by inadequacy of price or otherwise. *Andrews v. Scotton*, 2 Bland 629 (671)." *Loft, Inc. v. Seymer*, 148 Md. 638, 129 A. 911; *Blank v. Frey*, 165 Md. 647, 170 A. 156.

After the appeal was taken by Charles W. Lippold, Louis A. Lippold and wife and Henry P. Lippold and wife, the remaining heirs filed a petition asking the court below to pass an order making them party exceptants to the exceptions and authorizing them to appear and file a brief in this court. As a result of that petition, an order was passed making them exceptants to the exceptions and authorizing them to appear in this court by counsel and file a brief and participate in the hearing

before this court.   As this order was passed by the lower court after the appeal was taken to this court, that court had no jurisdiction to pass the order.   *Universal Realty Corp., Inc. v. Felser,* 179 Md. 635, 643, 22 A. 2d 448; *Eastern States Corp. v. Charles Eisler,* 181 Md. 526, 30 A. 2d 867.   Furthermore, they did not note an appeal within two months from the order appealed from as required by Code, 1939, Art. 5, Sec. 6.   Therefore, the appeal of these additional parties must be dismissed.

> *Order of October 26, 1942, overruling the exceptions, affirmed.*
>
> *Appeal of additional parties dismissed.*
>
> *Costs to be paid by the appellants.*